**Henry BRULAY, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 21198.**

United States Court of Appeals
Ninth Circuit.

Aug. 9, 1967.

Certiorari Denied Dec. 4, 1967.

See 88 S.Ct. 469.

Peter J. Hughes, Sheela, O'Laughlin & Hughes, San Diego, Cal., for appellant.

Edwin L. Miller, Jr., U. S. Atty., Phillip W. Johnson, Asst. U. S. Atty., San Diego, Cal., for appellee.

Before BARNES and JERTBERG, Circuit Judges, and SMITH,* District Judge.

RUSSELL E. SMITH, District Judge:

Henry Brulay was convicted of conspiring to smuggle amphetamine tablets into the United States. 18 U.S.C. §§ 371, 545. The evidence, if admissible, was sufficient to warrant a jury in finding that the defendant received quantities of amphetamine tablets at a Mexican airport and transported them to a building in Tijuana, Mexico, over which he had control. By means of telephone calls meetings were arranged between the defendant and David Fierro in Tijuana, at which meetings the tablets were delivered by the defendant to Fierro for transportation to the United States. This was done pursuant to an agreement with Fierro who had agreed to pay the defendant twenty dollars for each load that he received.

A reversal is urged for six reasons.

It is urged that the fruits of an illegal search and seizure were admitted in evidence.

Two Mexican police officers noticing that the car which the defendant was driving looked heavy in the rear, stopped him and asked him what he had in the car. The defendant appeared to the officers to be nervous so without a warrant they arrested him and took him into the police station. There defendant, at the request of the officers, opened the trunk of the car where two hundred ninety-seven pounds of amphetamine tablets were found. Questioning at the police station revealed that the defend-

* Russell E. Smith, United States District Judge, District of Montana, sitting by designation.

ant had additional tablets stored. The defendant took the officers to a house in Tijuana where nineteen hundred eighty pounds of amphetamine tablets were found. No United States officers participated in the questioning at or prior to the time of the seizure, and although the customs agents of the United States had alerted Mexican federal police to the defendant's activities, the Tijuana municipal policemen who made the seizure were not acting at the instigation of United States customs or narcotic officials. A motion to suppress was denied, and evidence of the seized amphetamine tablets was admitted. It was properly admitted.

■ The Fourth Amendment is directed at the Federal Government and its agencies.[1] Fourth Amendment rights are protected from state encroachments by the Fourteenth Amendment which reaches the states and their agencies.[2] The Fourth Amendment does not, by its language, require the exclusion of evidence and the exclusionary rule announced in Weeks is a court-created prophylaxis designed to deter federal officers from violating the Fourth Amendment. Neither the Fourth nor the Fourteenth Amendments are directed at Mexican officials and no prophylactic purpose is served by applying an exclusionary rule here since what we do will not alter the search policies of the sovereign Nation of Mexico.

For these reasons we hold that there was no error in admission of evidence of the seized amphetamine tablets. Birdsell v. United States, 346 F.2d 775 (5 Cir. 1965), cert. den. 382 U.S. 963, 86 S.Ct. 449, 15 L.Ed.2d 366 (1965); Wentz v. United States, 244 F.2d 172 (9 Cir. 1957), cert. den. 355 U.S. 806, 78 S.Ct. 49, 2 L.Ed.2d 50 (1957).

It is urged that statements made by the defendant were improperly admitted.

Several statements were made by the defendant to officers of Mexico and the United States. These statements were admitted in evidence, and if not necessary to the conviction they played a vital part in it.

■ The first statement was made in Mexico to Mexican officials. We note first of all, assuming arguendo that the defendant had Sixth Amendment rights when questioned in Mexico by Mexicans, that he did not request an attorney and bring himself within the shelter of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). The trial preceded June 13, 1966, the effective date of Miranda.[3] It does not appear that the defendant was brought before a magistrate, and, probably, if what happened had happened within the United States the doctrine of McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1942) would have been applicable. It does not appear, however, that defendant was held in violation of any Mexican law, and if he was, we believe that the McNabb doctrine would be inapplicable. In McNabb and Upshaw[4] the court was concerned with the violations of federal law by federal officers, and in the exercise of its supervisory power over inferior federal courts, it refused to condone such violations by permitting the use of the fruits of them. We regard the rule of exclusion of McNabb in the same light as the rule of exclusion in Weeks—a rule designed to require that officers of the United States obey its laws. The reason underlying the McNabb rule is not here applicable, and the rule should not be applied.

■ We then turn to the problem: Were the statements voluntary within Fifth Amendment standards which we

1. Weeks v. United States, .232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914).

2. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

3. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

4. Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100 (1948).

believe to be applicable?[5] The defendant did not testify. From the evidence given by the officers it appears that the defendant was intermittently questioned at the police station from about 9:00 A.M. to 11:00 P.M. on the 28th of January, 1966. It was during the course of this questioning that he opened the trunk of his car and took the officers to the house. As previously indicated, amphetamine tablets were found in both places. The record is silent as to the number of rest periods permitted to the defendant and as to the food or toilet facilities furnished to him. There is no evidence of any physical or psychological coercion, except what might be inferred from the total elapsed time between the commencement and termination of the interrogation. Customs Agent Moore, who saw defendant on January 30, testified that defendant bore no visible bruises, did not appear to be sleepy and made no complaints about his treatment by the Mexican officials. Defendant did tell the United States arresting officer that he had cooperated fully with the Mexican police. The trial court specifically found that the statements were not coerced, and then, by more than adequate instructions, told the jury that unless it is found that the confessions were voluntary it should disregard them.[6]

 While appellate judges have not been reluctant to go behind the findings of trial judges and juries in con-fession matters, the rule that the determination of the voluntariness of a confession, where there are conflicting facts or conflicting inferences, is primarily one for the trial court[7] has not yet been abandoned. We believe that the trial judge and the jury, on the record here, were warranted in finding as they did, and certainly there was no clear abuse of discretion.

The second interrogation occurred on January 30th in the police headquarters in Tijuana and was conducted by a customs agent of the United States who, prior to the interrogation, fully advised the defendant of his rights. There is not the slightest evidence of any coercion at the time of this interrogation. Since we have rejected the claim of coercion as to the first interview, we reject the argument that the second was a continuation of or a product of a tainted first interview.

It is urged that there was no proof of any act within the United States.

 Defendant asserts that there is no proof that the conspiracy was formed in the United States, or that he committed any overt act within the United States, and that regardless of what happened in Mexico no crime was committed for which he may be tried. The defendant was a citizen of the United States and may be punished here for the crime charged although it was committed in

---

5. In Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897) statements were taken by Canadian officers in Halifax, and the court, without considering the problem of its extraterritorial effect, applied Fifth Amendment standards in rejecting the statements made. We recognize the difference between our treatment of the Fourth and Fifth Amendments in this opinion. As an explanation we suggest that the law is violated in Fourth Amendment cases when the illegal search takes place. At that moment the violation of the Constitution is complete. The fruits of the illegal search are rejected not because the Constitution expressly requires it, but because it is inappropriate to sanction the previous violations of law by federal officers. That policy cannot be exported. In Fifth

Amendment cases the problem is different: At the time a confession is taken laws may or may not be violated. Certainly there are many cases where confessions which do not meet Fifth Amendment standards are taken without any violation of law. It is not until the statement is received in evidence that the violation of the Fifth Amendment becomes complete. For this reason we believe that if the statement is not voluntarily given, whether given to a United States or foreign officer,—the defendant has been compelled to be a witness against himself when the statement is admitted.

6. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

7. Lyons v. State of Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481 (1944).

*Mexico.* The rule is enunciated in United States v. Bowman, 260 U.S. 94, 43 S.Ct. 39, 67 L.Ed. 149 (1922) as follows:

"But the same rule of interpretation should not be applied to criminal statutes which are, as a class, not logically dependent on their locality for the government's jurisdiction, but are enacted because of the right of the government to defend itself against obstruction, or fraud wherever perpetrated, especially if committed by its own citizens, officers, or agents. Some such offenses can only be committed within the territorial jurisdiction of the government because of the local acts required to constitute them. Others are such that to limit their *locus* to the strictly territorial jurisdiction would be greatly to curtail the scope and usefulness of the statute and leave open a large immunity for frauds as easily committed by citizens on the high seas and in foreign countries as at home. In such cases, Congress has not thought it necessary to make specific provision in the law that the *locus* shall include the high seas and foreign countries, but allows it to be inferred from the nature of the offense." Supra, at 98, 43 S.Ct. at 41.

Since smuggling by its very nature involves foreign countries, and since the accomplishment of the crime always requires some action in a foreign country, we have no difficulty inferring that Congress did intend that the provisions of 18 U.S.C. § 545 should extend to foreign countries at least as to citizens of the United States, and that 18 U.S.C. § 371, the conspiracy section, is extended along with it.

It is urged that there was a fatal variance.

After alleging the conspiracy charged, the indictment states, " * * * committed divers overt acts, among which are the following:

"1. On or about January 7, 1966, defendant HENRY BRULAY left his residence in a Chrysler automobile.

"2. On or about January 26, 1966, defendant HENRY BRULAY caused the transportation of approximately 1,958 pounds of Amphetamine tablets from the garage of Henry Brulay, Jr., also known as Henry Anthony Brulay, to another location; * * *"

The court submitted special interrogatories to the jury. The jury answered one of the interrogatories but did not answer the other two. From these answers we know that the jury which had been so instructed, convicted the defendant by finding that he committed an overt act which was not specifically charged in the indictment. Squarely presented is the problem: May a conspiracy conviction rest upon the proof of an overt act not charged in the indictment? If the case of Fredericks v. United States, 292 F. 856 (9 Cir. 1923) states today's law in this Circuit, the answer is 'no'; otherwise it is 'yes'.

The statutory law governing the court at the time of Fredericks was § 269 of the Judicial Code, 28 U.S.C. § 391, 40 Stat. 1181, reading:

"On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

The law governing the court today is 28 U.S.C. § 2111, reading:

"On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."

and Rule 52(a) of the Rules of Criminal Procedure, reading:

"Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

The word difference between the law of 1919 and the laws of today is not great, but it is to be noted that the phrase "technical errors" has been deleted from the present law and the word "errors" substituted. It may be also noted that Rule 52(a) contains an express reference to "variance" which did not appear in the 1919 Act. To us these changes indicate a Congressional intention to emphasize the concept that any error not causing detriment should be disregarded and to make it clear that variances are to be treated no differently from other defects. While the Fredericks case did not mention § 269 of the Judicial Code, we must take it to be an application of the then existing statutory law. As such it does not bind us today because we apply different statutes and rules.[8]

▮ Obeying the mandates of Rule 52(a) we inquire: Was any substantial right of the defendant affected? The overt act on which the guilty verdict was based was: "Defendant Henry Brulay on or about January 28, 1966, drove an automobile in the City of Tijuana, Mexico, in the trunk of which were contained amphetamine tablets." The record leaves no doubt of the truth of this. The record indicates that all of the persons who had knowledge of the tablets in the trunk of the car, and who saw the defendant driving it, were presented as witnesses and were examined. It is not suggested in the argument here nor was it suggested to the trial court, that there was any evidence other than that which was produced which could have shed any light upon the overt act found. The fact of the tablets in the trunk was so central to the case that it is impossible to believe that the defendant and his lawyers did not know that the government would prove the overt act found. In short, nothing happened here that would not have happened had the indictment contained a statement of the overt act found. Additionally it may be observed that there was no motion for a bill of particulars, that there was no objection (except on fourth amendment grounds) when evidence of the overt act found was admitted, and that at no time did the defendant claim surprise. There was a variance but it did not affect the defendant's rights, let alone his substantial rights, and within the letter and spirit of Rule 52(a) and 18 U.S.C. § 2111, we find no reversible error.

▮ It is urged that the conviction rests upon defendant's uncorroborated statements. It would serve no useful purpose to recite the evidence in this opinion. We have examined the record and believe that the defendant's statements were sufficiently corroborated within the rule enunciated in Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954).

▮ Evidence that one Rodriguez was dealing in amphetamine tablets in the United States was admitted. These tablets were made by the same press as those found in the defendant's possession and were of a kind not manufactured in the United States. It is urged that the admission of this evidence was error. There was evidence of numerous telephone calls between a telephone listed to Rodriguez in Los Angeles and one which had been listed by the defendant under an assumed name at San Ysidro, California, which is about one-half mile from the Mexican border. This evidence, while not conclusive, was relevant as tending to prove defendant's connection with the importation of the tablets into the United States and it was not error to admit it.

Finding no reversible error, the judgment of conviction is affirmed.

---

8. Cf. United States v. Negro, 164 F.2d 168 (2 Cir. 1947). See also Note, 72 Harv.Law Rev. 920, 993 (1959).