717 P.2d 1039

**STATE of Idaho, Plaintiff-Respondent,**

v.

**John Edward BURKE,
Defendant-Appellant.**

No. 15565.

Court of Appeals of Idaho.

March 31, 1986.

Rehearing Denied May 22, 1986.

Petition for Review Denied
July 25, 1986.

Michael J. Verbillis, of Coeur d'Alene, and Eric T. Nordlof (argued), Seattle, Wash., for defendant-appellant.

Jim Jones, Atty. Gen. by Lynn E. Thomas, Sol. Gen., and A. René Fitzpatrick, Deputy Atty. Gen. (argued), Boise, for plaintiff-respondent.

BURNETT, Judge.

John Edward Burke stands convicted of possessing marijuana with intent to deliver. On appeal he contends that the marijuana and other related evidence should have been suppressed because they were obtained, directly or indirectly, through a search and a police interrogation in Canada that did not meet American constitutional standards. He also attacks the legality of searches conducted in Idaho. Moreover, he raises a host of challenges to the fairness of his trial, urging that the trial was tainted by newspaper publicity, by admission of hearsay evidence, by denial of his right to confront an adverse witness, by failure to instruct the jury on a lesser crime of "attempted" possession, by prosecutorial misconduct, and by denial of a motion for judgment of acquittal. For reasons explained below, we reject each of these arguments and affirm the judgment of conviction.

I

We first turn to the suppression issues. Our facts begin with a telephone call on November 10, 1981. The call was placed by an officer of the Royal Canadian Mounted Police to a narcotics investigator for the Idaho Department of Law Enforcement. The Canadian officer said a confidential informant had told him that a large amount of marijuana soon would be transported to Red Deer, Alberta, Canada, by one John Edward Burke, a resident of Coeur d'Alene. At the Canadian officer's request, the Idaho investigator kept watch on Burke's residence. He saw Burke performing some kind of work on a pickup truck in his garage. In the early morning hours of November 13 the investigator found that the pickup was gone. He notified the Canadian officer that Burke apparently had departed the Coeur d'Alene area.

On the following day, the Idaho investigator received another call. The Canadian officer informed him that Burke had been arrested in Red Deer the evening of November 13. Approximately thirty pounds of marijuana had been found in a false gas

tank and in the spare tire of Burke's pickup truck. The Canadian officer requested that a warrant be obtained to search Burke's home for evidence showing a conspiracy or scheme to import marijuana into Canada. The Idaho investigator interviewed two of Burke's stepsons who had been at the Burke home on November 13. They reported seeing items often used in the sale of marijuana, such as duct tape, a scale and plastic bags. They also reported seeing Burke carry an empty gas tank to his bedroom, which they were forbidden to enter. Armed with this information and with the facts provided by the Canadian officer, the Idaho investigator obtained a warrant to search Burke's house and an attached garage. The search produced a scale, gray duct tape, plastic bags, a heat-sealing device, and documents indicating the purchase of a large quantity of marijuana in South America. In the garage the investigator also found several burlap bags with South American labels. The bags contained marijuana residue.

On November 18 the Idaho investigator notified the Canadian officer of his findings. Later the same day the Canadian officer called again. This time the Canadian officer said he had examined Burke's wallet, seized during the arrest, and had found a rental agreement pertaining to a commercial ministorage facility in Coeur d'Alene. He asked the Idaho investigator to procure a warrant to search the ministorage unit. The Idaho investigator complied. A search that evening revealed approximately two hundred fifty pounds of marijuana in storage. This information was transmitted to the Canadian officer who, on November 19, conveyed it to Burke. In response to a question by the officer, Burke admitted that he had rented the ministorage unit and had kept a key on the headboard of his bed at home in Coeur d'Alene.

Burke pled guilty to charges filed against him in Canada and served a sentence of confinement. Upon his return to Idaho, he confronted the instant charge of possessing, with intent to deliver, the marijuana found in the ministorage unit. He moved to suppress the marijuana, the ministorage agreement, evidence seized in the garage of his house and any testimony concerning his admission of having rented the unit. The motion was denied.

### A

Burke's effort to suppress the marijuana and the ministorage agreement requires us to examine the limits of protection afforded by the fourth amendment to the United States Constitution. Burke contends that the warrantless search of his wallet by the Canadian officer, several days after the arrest at Red Deer, violated the fourth amendment. Upon this hypothesis, Burke argues that the agreement and the marijuana found in the ministorage unit were the products of an illegal search. However, we need not decide whether the fourth amendment was violated. In our view, the fourth amendment simply is not applicable.

In general, the United States Constitution does not govern the acts of foreign officials outside the United States, even if they seize evidence from American citizens and the evidence later is adduced at trial in an American court. *United States v. Rose*, 570 F.2d 1358 (9th Cir.1978); *Stonehill v. United States*, 405 F.2d 738 (9th Cir.1968), *cert. denied*, 395 U.S. 960, 89 S.Ct. 2102, 23 L.Ed.2d 747 (1969); *Brulay v. United States*, 383 F.2d 345 (9th Cir.1967), *cert. denied*, 389 U.S. 986, 88 S.Ct. 469, 19 L.Ed.2d 478 (1967). There are two closely related exceptions to this broad axiom. First, the evidence may be excluded on due process grounds if the circumstances of the foreign search are so extreme that they shock the American judicial conscience. Second, the evidence may be suppressed under an extension of the fourth amendment exclusionary rule if American law enforcement authorities jointly conduct the foreign search or if the foreign officials conduct the search as agents for their American counterparts. *United States v. Hensel*, 699 F.2d 18 (1st Cir.1983), *cert. denied*, 401 U.S. 958, 103

S.Ct. 2431, 77 L.Ed.2d 1317 (1983); *United States v. Rose, supra.* Here, no shocking acts were committed; neither did any American officer jointly engage in searching Burke's wallet. Consequently, the question is narrowed to whether the Canadian officer acted as an agent for the Idaho investigator in conducting the search.

Occasionally, and perhaps unfortunately, the agency exception has been called a "joint venture" exception. Seizing upon this vague term, Burke has argued that the cooperation exhibited by Idaho and Canadian authorities in this case provides a "classic" illustration of a "joint venture." Such loose language simply obtunds the analysis. The notion of a "joint venture" has a sharply defined historical meaning. It originated in the days before *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), when the fourth amendment was applied to searches by federal authorities but not to searches by state officers. In those days, federal authorities were known to ask their state colleagues occasionally to conduct searches proscribed by the fourth amendment. The state officers then would pass the evidence obtained to the federal officials on what the courts described as a "silver platter." To limit this abuse, the United States Supreme Court held that the fourth amendment exclusionary rule would apply if the state and federal authorities were engaged in a "joint operation." *Byars v. United States,* 273 U.S. 28, 33, 47 S.Ct. 248, 250, 71 L.Ed. 520 (1927). The Supreme Court said that judges must be "vigilant to scrutinize the attendant facts with an eye to detect and a hand to prevent violations of the Constitution by circuitous and indirect methods." 273 U.S. at 32, 47 S.Ct. at 249. The kind of "joint operation" envisioned by the Supreme Court was one where a state officer did for his federal colleague what the fourth amendment prevented the federal officer from doing for himself. Mere cooperation, or participation by federal authorities in an investigation of mutual interest, would not suffice to invoke the fourth amendment exclusionary rule.

This carefully circumscribed meaning of a "joint operation" or "joint venture" underlies modern decisions applying the agency exception to searches by foreign authorities. The courts have held that the fourth amendment is not triggered by a foreign search conducted in response to information cooperatively furnished by American authorities. *See cases cited in* 1 W. RINGEL, SEARCHES & SEIZURES, ARRESTS AND CONFESSIONS § 2.3(b) (1985) (hereinafter cited as Ringel). A recent example may be found in *United States v. Delaplane,* 778 F.2d 570 (10th Cir.1985). There, a Canadian officer—coincidentally, the same officer involved in the present case—contacted an American customs agent and requested routine intelligence information. Several telephone conversations ensued. The Canadian officer subsequently obtained a wiretap that was permissible under Canadian law but that would not have been allowed in the United States. Based on the wiretap, the Canadian officer provided American authorities with information leading to arrests for narcotics offenses. The defendants moved to suppress evidence obtained by use of the Canadian wiretap. The district court denied the motion, finding no "joint endeavor" sufficient to invoke fourth amendment protection. *Id.* at 574. The district court's ruling was affirmed on appeal.

Here, Burke's wallet was seized incident to arrest in Canada on November 13. Although several days elapsed before the wallet was searched on November 18, no warrant was procured and it is undisputed that none was required under Canadian law. The arrest had been facilitated by information obtained from the Idaho investigator. However, the investigator did not ask for Burke to be arrested, for his wallet to be seized, or for its contents to be searched. Those were independent acts of the Canadian officer, pursuing his own investigation. We conclude that no agency relationship, or "joint venture," subjected the Canadian officer's search of the wallet

to scrutiny under American standards. We uphold the district court's ruling.

## B

We next consider Burke's statement to the Canadian officer on November 19—the day after marijuana was found at the ministorage unit in Coeur d'Alene—admitting that he had rented the unit. Burke sought to suppress testimony concerning this statement, asserting that the Canadian officer had not fully honored his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Burke testified at the suppression hearing that he had requested the presence of a lawyer, but that no lawyer was present, when the Canadian officer asked him about the ministorage unit. The Canadian officer testified that no such request was made at that time. The district court denied the suppression motion without making a finding on this controverted issue of fact. However, we believe the court's ruling can be sustained regardless of this unresolved conflict.

It is undisputed that Canadian law, at times pertinent to this case, did not provide a complete set of counterparts to the *Miranda* rights. Although a right to silence was recognized, there was no right to have counsel present during custodial interrogations nor any requirement that interrogation cease upon the accused's request to see an attorney. It is also undisputed that Burke was advised, shortly after his arrest, of his right to remain silent. He received a "Canadian Police Warning," set forth in the record as follows: "You need not say anything. You have nothing to hope from any promise or favor and nothing to fear from any threats whether or not you say anything. Anything you do say may be used as evidence." In addition, the record clearly shows, as the district court found, that Burke's admission on November 19 was made voluntarily. It was not the product of any official coercion, threats or promises.

■ By finding that Burke's admission was voluntary, and by declining to make a finding as to whether Burke's right to counsel under *Miranda* had been abridged, the district court implicitly held that *Miranda* rights simply do not extend beyond the territory of the United States. There is some authority to support this strict territoriality approach. *E.g., United States v. Chavarria*, 443 F.2d 904 (9th Cir.1971). However, we think the better reasoned cases recognize that exceptions may arise when American authorities play a leading role in foreign interrogations or when interrogations are conducted by foreign officials acting as agents for their American counterparts. *See, e.g., United States v. Mundt*, 508 F.2d 904 (10th Cir.1974), *cert. denied*, 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 103 (1975), *and United States v. Welch*, 455 F.2d 211 (2d Cir.1972) (recognizing such exceptions but holding facts insufficient to invoke them). These cases treat the protections of the fifth and sixth amendments, which underlie the *Miranda* rights, as analogous to the protections contained in the fourth amendment. As noted earlier, the fourth amendment may be applied to searches in foreign countries jointly conducted by American officials or conducted by foreign authorities acting as agents for American officials. We think the analogy is sound. We see no reason why the fifth and sixth amendment exclusionary rules should be more greatly restricted than the fourth amendment exclusionary rule. Our view is consistent with cases applying *Miranda* to interrogations by private persons when such persons have acted as agents for law enforcement officials. *See* 2 Ringel § 26.4.

■ In the present case, no American officer participated in the November 19 interview when Burke's admission was elicited. Neither does it appear that the Canadian officer acted as the Idaho investigator's agent in conducting the interview. There is no evidence that the Idaho investigator requested the Canadian officer to ask Burke about the ministorage unit. The Canadian officer, who was interested in establishing a conspiracy or scheme to import marijuana into Canada, had an inde-

pendent reason to inquire. We conclude that an exception to the territorial limits of *Miranda* has not been established here. Accordingly, we sustain the district court's refusal to suppress testimony regarding Burke's admission.

### C

■ Burke has challenged the validity of the Idaho warrants for searches of his home and the ministorage unit. He argues that the warrant to search his home was overbroad because it embraced the attached garage as well as the living quarters. He asserts that no probable cause existed to believe that any marijuana or related evidence might be found in the garage. This assertion patently lacks merit. There was no lesser reason to expect that marijuana or other evidence would be in the garage than elsewhere on the premises. The attached garage was an integral part of the residential structure. In any event, a search of residential property pursuant to a warrant may include structures constituting a logical part of the premises described. *See generally State v. White*, 145 Ariz. 422, 701 P.2d 1230 (Ariz.App.1985).

Burke's attack on the warrant to search the ministorage unit turns upon an allegation that the Idaho investigator presented falsified information in order to obtain the warrant. While testifying before the magistrate, the investigator said Burke's wife had told the Canadian officer that "there were two hundred more pounds where the thirty pounds came from." Later, during the suppression hearing, the investigator acknowledged that he had been mistaken. He testified that any mention of two hundred pounds of marijuana must have come from the Canadian officer's confidential informant, not from Mrs. Burke. The Canadian officer testified simply that the informant had referred to a "large quantity" of marijuana.

■ In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the United States Supreme Court held that evidence presented in support of a search warrant application may be impeached only

if a threshold showing is made that the evidence not only was false but also was presented knowingly and intentionally, or with reckless disregard for the truth. If such a showing is made, the existence of probable cause must be evaluated upon the remaining evidence. Idaho adopted *Franks* in *State v. Lindner*, 100 Idaho 37, 592 P.2d 852 (1979). Our Supreme Court held that a merely "negligent" falsehood, even if necessary to the magistrate's finding of probable cause, does not affect the validity of the warrant. 100 Idaho at 41, 592 P.2d at 856. We have commented critically on the evolution of the *Franks-Lindner* rule. *See State v. Schaffer*, 107 Idaho 812, 693 P.2d 458 (Ct.App.1984). Nevertheless, we are bound by it.

■ In the case before us, the falsity of information presented to the magistrate was conceded. However, the district court found that Burke had failed to show that the falsehood was presented knowingly and intentionally, or with a reckless disregard for the truth. Rather, the court found that testimony before the magistrate consisted of "mere negligent misrepresentations." The district court's findings are supported by substantial, albeit conflicting, evidence. They will not be disturbed on appeal. Consequently, we do not reach the question whether probable cause would have existed to search the ministorage unit, absent the false testimony.

Burke further challenges the Idaho warrants on the ground that they improperly authorized nighttime searches. We note, parenthetically, that it is not self-evident how nighttime execution of a warrant would adversely affect any privacy or tranquility interest asserted by the lessee of a commercial ministorage unit. However, I.C. § 19–4411 and I.C.R. 41(c) establish criteria for nighttime searches without distinguishing among the types of places searched.

■ The statute allows a nighttime search only upon a "positive" showing that the items to be seized are at the location to be searched. Rule 41(c) permits the magis-

628

trate to order a nighttime search when there is "reasonable cause" to do so. In *State v. Lewis*, 106 Idaho 800, 683 P.2d 448 (Ct.App.1984), and in *State v. Fowler*, 106 Idaho 3, 674 P.2d 432 (Ct.App.1983), we held that the statute and rule were complementary, requiring both a "positive" showing and "reasonable cause" to conduct the search at night. However, our view was rejected by the Supreme Court, which has chosen to give Rule 41(c) dominant effect. *State v. Lewis*, 107 Idaho 616, 691 P.2d 1231 (1984). Consequently, we are constrained to narrow our focus to "reasonable cause." Under this lenient standard, "when a magistrate reasonably feels a nighttime search would serve the ends of justice, his discretionary decision will not be disturbed on appeal." *State v. Holman*, 109 Idaho 382, 388, 707 P.2d 493, 499 (Ct. App.1985).

■ In this case, the magistrate orally and in writing authorized nighttime searches of Burke's house and of the ministorage unit. On each occasion, the magistrate was informed that Burke was in Canadian custody and that marijuana in addition to the quantity seized in Canada might be found in Idaho. There was a risk that the marijuana or other evidence might be removed or destroyed by persons aware of Burke's incarceration. Applying the standard prescribed by our Supreme Court, we hold that "reasonable cause" for the nighttime searches existed. The magistrate did not abuse his discretion by authorizing them.

## II

■ We now turn to Burke's contention that he was denied a fair trial. He urges, first, that the district court erred by declining to poll the jurors, while the trial was underway, to determine whether certain newspaper articles had created bias. However, those newspaper articles are not part of the record furnished to us on appeal. We will not presume error. An appellant bears the burden of providing a record sufficient to evaluate the issues he raises. *State v. Sima*, 98 Idaho 643, 570

P.2d 1333 (1977); *State v. Murinko*, 108 Idaho 872, 702 P.2d 910 (Ct.App.1985). We conclude that this issue has not been adequately preserved for appellate review.

Burke next argues that the district court erred by admitting the ministorage agreement into evidence. The document identified the storage unit in question, recited the rental terms, and contained Burke's signature and address. The authenticity of the document was not questioned at trial. Rather, the agreement was challenged as hearsay.

Hearsay is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted. In this case, the prosecutor argued that the agreement was offered not to prove the truth of any assertion it contained, but merely to show the tangible thing that had been found in Burke's wallet. In support of his objection, Burke argued that if the agreement had been a blank piece of paper, it would not have resulted in the search of a ministorage unit in Coeur d'Alene nor would it have had any probative value at trial. The real significance of the agreement, Burke claimed, was that its contents tied him to the ministorage unit and to the marijuana found there.

■ These arguments frame a close and intriguing question as to when a document ceases merely to be demonstrative evidence and becomes an extrajudicial statement subject to the hearsay rule. But we need not decide that question today. Neither must we decide whether, if the agreement was hearsay, an adequate foundation was laid to invoke one or more of the hearsay exceptions. For even if the agreement should not have been admitted, the error would not be reversible. "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." I.C.R. 52.

To determine whether an error is harmless in a criminal case, the core inquiry is "whether it appears from the record that the ... [error] contributed to the verdict,

leaving the appellate court with a reasonable doubt that the jury would have reached the same result had the [error] not occurred." *State v. Palin*, 106 Idaho 70, 75, 675 P.2d 49, 54 (Ct.App.1983). We entertain no such reasonable doubt in this case. Burke admitted having rented the ministorage unit and we have upheld the district court's refusal to suppress that admission. In addition, the Idaho investigator testified, without objection, that he "had conversation with the [ministorage] caretaker there that showed John Burke was renting that." Burke's rental of the unit was a fact firmly established, and never denied, at trial. We conclude that error, if any, in admitting the rental agreement over the hearsay objection was harmless.

Burke next asserts that the district court should have compelled the prosecutor to bring forward the Canadian officer's confidential source. Burke characterizes the court's failure to do so as a violation of his sixth amendment right to confront an adverse witness. However, the record discloses that no reference to the confidential source, or to information received from the source, was made during the prosecutor's direct examination of the Canadian officer. Instead, it was defense counsel who elicited testimony about the confidential source, during cross-examination.

■■■■ Rule 16(f)(2), I.C.R., provides that disclosure of a confidential informant's identity is not required unless the informant is produced as a witness at a hearing or trial or unless such disclosure is otherwise ordered by the court. We are not convinced that such an order was required in this case. The United States Supreme Court has recognized a testimonial privilege against identifying informers. *See McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). That privilege now is embodied in I.R.E. 509. Although the privilege is said to belong to law enforcement agencies of the United States, we perceive no logical reason why it would not also have extended to the Canadian officer in this case. The privilege is founded upon the general proposition that

an informer—whether motivated by good citizenship, promise of leniency or prospect of pecuniary reward—may condition his cooperation upon an assurance of anonymity to protect himself or his family. Without such protection, some persons would not provide law enforcement authorities with important information. We believe these purposes should not be defeated where, as here, the defendant himself elicits testimony about an informant, then cries foul when the informant is not produced as a witness.

This case is fundamentally different from *State v. Warren*, 230 Kan. 385, 635 P.2d 1236 (Kan.1981), cited by Burke. There, the prosecutor stated that a witness to the alleged crime had identified the defendant as the perpetrator. However, the witness did not take the stand and thus was not available for cross-examination. Noting that the prosecutor's statement had created prejudice that could not have been overcome without producing the witness, the Kansas Supreme Court held that the defendant was entitled to a new trial. In contrast, the prosecutor in our case made no such statement to the jury nor did he adduce hearsay evidence of what the informant had said. We conclude that the district court acted properly in refusing to compel attendance at trial by the informant.

■■■■ Burke further argues that the court erred by failing to instruct the jury on a lesser crime of "attempted" possession of marijuana. A trial court is required to instruct on lesser included offenses but only if the elements of such offenses are reasonably supported by the evidence. *E.g.*, *State v. Totten*, 99 Idaho 117, 577 P.2d 1165 (1978). We have surveyed the record and agree with the district judge that no such support exists in this case.

■■■■ Burke next asserts that the trial court should have stricken several statements by the prosecutor during his closing argument to the jury. The first statement concerned a discrepancy between the weight of marijuana seized (approximately two hundred fifty pounds) and the weight

of marijuana introduced at trial more than two years later (about two hundred thirty pounds). The prosecutor argued that the difference could be explained by moisture loss. There was testimony to this effect and we find no impropriety in the prosecutor's argument.

■ However, we are less sanguine about two other remarks challenged on appeal. The prosecutor stated:

If [the investigator] were the kind of police officer that lies in a case, he would not be a police officer, once he found out [sic]. In fact, he would be prosecuted for perjury.

The prosecutor concluded with this observation:

Ladies and gentlemen, my argument is finished but before I do sit down, I just want to say one thing. That you are part of the justice system. You are part of the justice system, and nobody sitting in this seat or sitting in seat [sic], the Prosecutor doesn't win or lose cases. But the community loses. The community loses. The law suffers if somebody is proved guilty beyond a reasonable doubt and does not get the proper verdict.

The first of these remarks implied that the prosecutor's official position afforded him a special means to evaluate, and to vouch for, the investigator's credibility. The second remark injected an issue broader than the guilt or innocence of the accused, suggesting that undesirable consequences would flow from a verdict of acquittal. These comments, although not egregious or inflammatory, were improper. *State v. Garcia*, 100 Idaho 108, 594 P.2d 146 (1979); *see* AMERICAN BAR ASSOCIATION, STANDARDS RELATING TO THE ADMINISTRATION OF CRIMINAL JUSTICE: THE PROSECUTION FUNCTION § 5.8 (1974). However, the record discloses no objection to these remarks when made. Rather, the objection has been made for the first time on appeal. We hold that any error introduced by these remarks was not "fundamental" and, therefore, is not reversible. *See State v. Ames*, 109 Idaho 373, 707 P.2d 484 (Ct.App.1985).

■ Finally, Burke contends that the district court should have granted his motion for a judgment of acquittal. The question presented by such a motion is whether the prosecution has presented substantial evidence upon which a rational jury could find that guilt has been established beyond a reasonable doubt. *State v. Holder*, 100 Idaho 129, 594 P.2d 639 (1979); *State v. Elisondo*, 103 Idaho 69, 644 P.2d 992 (Ct. App.1982). In this case, the defense presented no evidence. The record when the motion was made corresponds to the record upon which the jury returned its verdict. Upon that record we believe the evidence provided an abundant basis for the jury to find that Burke possessed marijuana and that the quantity possessed demonstrated an intent to deliver. The motion for a judgment of acquittal was correctly denied.

The judgment of conviction is affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.