190 P.3d 197

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Edwin CONTRERAS–GONZALES, Defendant–Appellant.**

**No. 33700.**

Court of Appeals of Idaho.

June 3, 2008.

Molly J. Huskey, State Appellate Public Defender; Mark J. Ackley, Deputy Appellate Public Defender, Boise, for appellant. Mark J. Ackley argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

LANSING, Judge.

Edwin Contreras–Gonzales appeals his conviction for trafficking in methamphetamine. He challenges the district court's partial denial of his motion to suppress evidence, the admission at trial of evidence of a chemical analysis determining that a substance found by the police was methamphetamine, and prosecutorial misconduct in the State's opening statement and closing argument.

## I.

### BACKGROUND

Seventeen-year-old Contreras–Gonzales and two young adult males were arrested in a Lewiston motel room in March of 2004, where police found approximately one and one-half pounds of methamphetamine and

$1,900 in cash. Contreras–Gonzales was initially placed in juvenile detention. He was interviewed by police on several occasions, including an instance on March 9, 2004, during which he made incriminating statements.

The State filed a petition pursuant to the Juvenile Corrections Act charging Contreras–Gonzales with trafficking in methamphetamine by constructively possessing more than 400 grams of the drug, a felony under Idaho Code § 37–2732B(a)(4)(C). Thereafter, on the State's motion, Contreras–Gonzales was waived to adult court. At trial, the State's theory of the case was that Contreras–Gonzales was the person known as "Carlos," who was believed to be the ringleader of the drug trafficking operation. Contreras–Gonzales was found guilty and received a unified sentence of twelve years with ten years determinate.

On appeal, Contreras–Gonzales asserts three claims of error in the trial court. He argues that the district court erred in denying his motion to suppress statements he made to officers during the March 9, 2004 interrogation, that a forensic lab technician was permitted to testify about the nature of the substance found in the motel room without adequate foundation, and that the prosecutor engaged in several acts of misconduct during her statements to the jury.

## II.

## DISCUSSION/ANALYSIS

### A. Motion to Suppress Statements

■ Contreras–Gonzales first argues that the district court erred in denying his motion to suppress statements he made during interrogation on March 9, 2004. The relevant facts are as follows. On March 6, 2004, after receiving information about suspected drug activity, Lewiston police officers went to a motel room to investigate. Contreras–Gon-

zales answered their knock and let the officers into the room. Eventually, the officers discovered a large quantity of methamphetamine.[1] Contreras–Gonzales was questioned by Officer Joedy Mundell until he told the officer that he did not want to talk further without "representation." The officer ended the interrogation at that time, but later that day, he went to the juvenile detention center to question Contreras–Gonzales, who again declined to speak to the officer. Although they knew that Contreras–Gonzales had stated that he did not want to talk and wanted representation, on March 7, 2004, Officer Glen Rogers and FBI Agent Mike Sotka again went to the detention center to question him. They presented a form for waiver of *Miranda*[2] rights, which he signed. He then made several incriminating statements.

On March 8, Contreras–Gonzales was arraigned, and counsel was appointed to represent him. Later that day, however, without ever having spoken to the appointed attorney, Contreras–Gonzales indicated that he wanted to talk to Officer Rogers and Agent Sotka again. In response, the officers returned to the detention center on March 9 to see Contreras–Gonzales. They later testified that they verified that Contreras–Gonzales wanted to speak with them and again read him his *Miranda* rights, although he refused to sign a card to indicate that he was willing to waive those rights. They then conducted an interview in which Contreras–Gonzales offered to cooperate with the officers in exchange for leniency. Among other things, he offered to help the police by setting up two or three-pound drug deals in the state of Washington Tri–Cities area.

Contreras–Gonzales brought a motion to suppress the statements that he made to police on March 7 and March 9. The district court granted the motion as to the statements made during the March 7 interroga-

---

1. There is no contention that the entry by the police officers or subsequent searches that led to the discovery of the methamphetamine were illegal.

2. In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that before being subjected to custodial interrogation by law enforcement, a suspect must be informed "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Id.* at 479, 86 S.Ct. at 1630–31, 16 L.Ed.2d at 726.

tion because they were obtained in violation of Contreras–Gonzales' *Miranda* rights. With regard to the statements made on March 9, however, the district court declined to suppress because Contreras–Gonzales had initiated that conversation with the police. Contreras–Gonzales contends that the district court should have suppressed his March 9 statements because the State did not show that during that conversation he knowingly, voluntarily, and intelligently waived his Sixth Amendment right to counsel.

■■■ The right of an accused to be represented by counsel in criminal proceedings is expressly guaranteed by the Sixth Amendment to the United States Constitution. It applies at all "critical stages" of the proceedings, commencing when adversary judicial proceedings are initiated, whether by formal charge, preliminary hearing, indictment, information, or arraignment. *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411, 417–18 (1972); *State v. Bagshaw,* 141 Idaho 257, 260 n. 2, 108 P.3d 404, 407 n. 2 (Ct.App.2004); *State v. Shelton,* 129 Idaho 877, 880–81, 934 P.2d 943, 946–47 (Ct. App.1997). This Sixth Amendment right is invoked if a defendant requests the appointment of counsel at arraignment. *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). The Fifth Amendment's guarantee against compulsory self-incrimination also carries a right to counsel that may be invoked during custodial interrogation even if no charge has yet been filed. *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378, 385–87 (1981); *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In the present case, by the time of the March 9 interrogation, Contreras–Gonzales had been formally charged with drug offenses, and an attorney had been appointed to represent him at his arraignment. Therefore, it is his Sixth Amendment right to counsel that he contends was violated.

■■■ Once a defendant who has been charged with an offense has retained or accepted appointment of an attorney, police may not initiate interrogation of the defendant without counsel being present, and any purported waiver of the defendant's right to counsel for a police-initiated interrogation is invalid. *Jackson,* 475 U.S. at 626, 106 S.Ct. 1404; *State v. Anderson,* 140 Idaho 484, 488, 95 P.3d 635, 639 (2004); *State v. Valdez,* 117 Idaho 302, 304–05, 787 P.2d 288, 290–91 (Ct. App.1989). If the accused himself initiates further communication with the police, however, he may waive his right to counsel, and officers may question him in the absence of the attorney. *Michigan v. Harvey,* 494 U.S. 344, 352, 110 S.Ct. 1176, 1181, 108 L.Ed.2d 293, 303–04 (1990). A waiver of the Sixth Amendment right to counsel is valid only when it constitutes an intentional relinquishment or abandonment of a known right. *Patterson v. Illinois,* 487 U.S. 285, 293, 108 S.Ct. 2389, 2395, 101 L.Ed.2d 261, 272–73 (1988); *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938). Such a waiver of Sixth Amendment rights made during a conversation initiated by the accused must be voluntary, knowing, and intelligent. A waiver will be valid if the accused was "made sufficiently aware of his right to have counsel present during the questioning, and of the possible consequences of a decision to forgo the aid of counsel." *Patterson,* 487 U.S. at 292–93, 108 S.Ct. at 2394–95, 101 L.Ed.2d at 272–73. The Supreme Court has said that the receipt of warnings "equivalent to those prescribed by *Miranda v. Arizona* . . . will generally suffice to establish a knowing and intelligent waiver of the Sixth Amendment right to counsel for purposes of post-indictment questioning." *Harvey,* 494 U.S. at 349, 110 S.Ct. 1176. *See also Patterson,* 487 U.S. at 293–96, 108 S.Ct. at 2395–97, 101 L.Ed.2d at 272–275. The State bears the burden of establishing a valid waiver, and courts should "indulge every reasonable presumption against waiver of fundamental constitutional rights." *Jackson,* 475 U.S. at 633, 106 S.Ct. 1404 (citing *Johnson,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461). On review of a decision to grant or deny a motion to suppress evidence, this Court will defer to the trial court's findings of fact unless they are clearly erroneous, *State v. Hawkins,* 131 Idaho 396, 400, 958 P.2d 22, 26 (Ct.App.1998), but will exercise free review over the application of constitutional standards to those facts. *Id.*

Contreras–Gonzales argues that the district court erred in denying his suppression motion because it considered only the fact that he had initiated the March 9 contact with the police, and did not consider whether he also made a valid waiver of his rights. He contends that the district court should have considered a number of factors, including his age, the absence of any contact with his parents between the time of his arrest and the March 9 interrogation, the fact that he had been incarcerated for more than seventy-two hours, that he had not yet had the opportunity to speak with appointed counsel, his refusal to sign a card acknowledging that he was waiving his rights, the officers' disregard of his previous invocation of his *Miranda* rights through their attempted resumptions of interrogation on March 6 and 7, and that he had been led to believe during the March 7 interrogation that if he cooperated with police he would not be charged as an adult.

We agree with Contreras–Gonzales that the district court ended its analysis too soon, upon finding that Contreras–Gonzales had instigated the March 9 contact with police, and omitted the necessary consideration of whether Contreras–Gonzales had waived his right to counsel on that date and, if so, whether the waiver was knowing, intelligent and voluntary. The evidence on these questions is not without conflict. On the one hand, Contreras–Gonzales asked to speak to the officers and ultimately did converse with them after being informed of his *Miranda* rights, but on the other hand, when asked to sign a card to acknowledge waiver of his rights, he refused to do so. Therefore, we are compelled to remand for findings on these issues.

■ If on remand the district court holds that Contreras–Gonzales' March 9 statements should have been suppressed because he did not knowingly, intelligently and voluntarily waive his right to counsel, then Contreras–Gonzales will be entitled to a new trial. We have considered whether the potential error in the denial of his suppression motion should be deemed harmless-not necessitating a new trial-in light of the other trial evidence, but have concluded that it could not be viewed as harmless. An evidentiary error is harmless if the reviewing court is convinced, beyond a reasonable doubt, that the outcome of the proceeding would have been the same in the absence of the error. *State v. Moore*, 131 Idaho 814, 821, 965 P.2d 174, 181 (1998); *State v. Slater*, 136 Idaho 293, 300, 32 P.3d 685, 692 (Ct.App.2001). Here, although the State presented significant evidence that Contreras–Gonzales was a participant in the drug trafficking scheme, and not just an uninvolved bystander in the motel room, it cannot be said that the State presented overwhelming evidence of guilt. The State's case was composed primarily of circumstantial evidence (principally Contreras–Gonzales' presence in the motel room, with two other occupants, where the methamphetamine was found) and the somewhat tenuous testimony of a "jailhouse informant." On this trial record, we are not convinced beyond a reasonable doubt that the jury would have found Contreras–Gonzales guilty if the evidence of the March 9 conversation with police had been suppressed. Therefore, if suppression is ordered on remand, a new trial will be required.

## B.   Admission of Evidence that Substance was Methamphetamine

■ Contreras–Gonzales next argues that the district court erred in allowing a witness for the State to testify that a chemical analysis showed that the substance seized from the motel room was methamphetamine. A forensic scientist for the Idaho State Police forensic laboratory testified as follows about tests he performed for a chemical analysis of the substance:

[Prosecutor]: What tests did you perform?

[Witness]: I did a couple of tests. The first one that I will do is a standard procedure for basically any crystalline type substance. Is I will run a color test. It's a screening test. It gives us an idea of what the substance may contain. The next test after that is I'll do an extraction and run that on an instrument called a JCMS. And that instrument confirms what is inside the crystals.

[Prosecutor]: And did you use both of those tests on these items?

[Witness]: Yes, I did.

[Prosecutor]: And from utilizing those tests were you able to come to—form an opinion as to what the contents of those three bags were?

[Witness]: Yes, I was.

[Prosecutor]: What is that opinion?

Defense counsel then objected: "I'm going to object, Your Honor, lack of foundation to the certification of the machines used to test the substance." The district court overruled the objection without comment, and the witness stated that the packages he tested contained methamphetamine.

Contreras–Gonzales argues that the district court erred in permitting this testimony because the State failed to lay adequate foundation as to the nature and reliability of the tests conducted. In particular, he asserts that the State did not lay foundation about what an "extraction" was, how it is accomplished, what a "JCMS" is, how it operates, how the results indicated the presence of methamphetamine, the reliability of the JCMS, or what steps had been taken to ensure its reliability.

■ The State asserts that Contreras–Gonzales' trial objection did not preserve this issue for appeal. We agree. It is a fundamental tenet of Idaho law that a proper and timely objection must be made in the court below before an issue is preserved for appeal. *State v. Gleason*, 130 Idaho 586, 592, 944 P.2d 721, 727 (Ct.App.1997). The specific ground for the objection must be clearly stated unless it is apparent from the context. Idaho Rule of Evidence 103(a)(1); *State v. Babb*, 125 Idaho 934, 940, 877 P.2d 905, 911 (1994). Objecting to the admission of evidence on one basis does not preserve a separate and different basis for exclusion of the evidence. *State v. Higgins*, 122 Idaho 590, 596, 836 P.2d 536, 542 (1992). The thrust of Contreras–Gonzales' argument on appeal is that there was no foundation to show the scientific validity of the tests or the reliability of the method of testing. His objection below, however, was only that the State had not shown that the machines themselves had received some unidentified type of certification; it did not assert the much broader alleged foundational deficiency now asserted on ap-

peal. Therefore, we will not address this claim of error.

## C. Prosecutorial Misconduct

■ Finally, Contreras–Gonzales contends that the prosecutor, Nancy Berger–Schneider of the Nez Perce County Prosecutor's office, engaged in misconduct seven times during opening statement and closing arguments. Contreras–Gonzales made no objection at trial to any of the prosecutor's comments that are now being challenged. When a party fails to preserve an issue for appeal through a timely objection, the issue will be reviewed on appeal only if it constitutes fundamental error. *State v. Lovelass*, 133 Idaho 160, 167, 983 P.2d 233, 240 (Ct. App.1999). The Idaho Supreme Court has defined fundamental error as follows:

> Error that is fundamental must be such error as goes to the foundation or basis of a defendant's rights .or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive.

*State v. Christiansen*, 144 Idaho 463, 470, 163 P.3d 1175, 1182 (2007); *State v. Bingham*, 116 Idaho 415, 423, 776 P.2d 424, 432 (1989). In *Christiansen*, the court recognized that it has also utilized other definitions of fundamental error:

> At other times, we have defined fundamental error as "[a]n error that goes to the foundation or basis of a defendant's rights," *State v. Kenner*, 121 Idaho 594, 597, 826 P.2d 1306, 1309 (1992), and "error which 'so profoundly distorts the trial that it produces manifest injustice and deprives the accused of his constitutional right to due process,'" *State v. Sheahan*, 139 Idaho 267, 281, 77 P.3d 956, 970 (2003) (quoting *State v. Mauro*, 121 Idaho 178, 180, 824 P.2d 109, 111 (1991)).

*Christiansen*, 144 Idaho at 470, 163 P.3d at 1182. Specifically with respect to prosecutorial misconduct during jury arguments, the Supreme Court has said that the misconduct will constitute fundamental error only if the comments were so egregious or inflammatory that any consequent prejudice could not have

been remedied by a timely objection and instruction to the jury that the comments should be disregarded. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *State v. Hairston*, 133 Idaho 496, 507, 988 P.2d 1170, 1181 (1999); *State v. Smith*, 117 Idaho 891, 898, 792 P.2d 916, 923 (1990). We therefore must address each of the claimed instances of misconduct to determine whether misconduct occurred, and if so, whether it amounted to fundamental error.

■ At trial, the State theorized that Contreras–Gonzales was the ringleader of a major drug trafficking enterprise moving methamphetamine from Washington into Idaho. On several occasions during opening and closing argument, the prosecutor emphasized that Contreras–Gonzales was an out-of-towner who came to "our town," "our community" and "our valley" to sell his "deadly product." Contreras–Gonzales contends that this was an improper attempt by the prosecutor to ally herself with the jurors or to make the jury feel that they were under siege from predatory outsiders.

It is well established that a prosecutor commits misconduct if he or she uses inflammatory tactics to appeal to the emotion, passion or prejudice of the jury. *State v. Baruth*, 107 Idaho 651, 657, 691 P.2d 1266, 1272 (Ct.App.1984) (misconduct to tell jury they must convict defendant to keep him from committing further crimes in the community); *State v. Burke*, 110 Idaho 621, 717 P.2d 1039 (Ct.App.1986) (suggesting that undesirable consequences to the community would flow from an acquittal was improper). Here, however, we do not perceive that the prosecutor's references to the fact that Contreras–Gonzales had come from another location rises to the level of an inflammatory tactic. Moreover, even if this was misconduct, our courts have held that remarks more objectionable than these—such as suggesting harmful consequences to the community if the defendant were acquitted—did not rise to the level of fundamental error. *Id.*

■ Contreras–Gonzales' next contention of prosecutorial misconduct, however, is well founded. The prosecutor misstated or misrepresented the testimony of several witnesses during closing argument. It is plainly improper for a prosecutor to mischaracterize the evidence adduced at trial. *State v. Raudebaugh*, 124 Idaho 758, 769, 864 P.2d 596, 607 (1993); *State v. Griffiths*, 101 Idaho 163, 166, 610 P.2d 522, 525 (1980), *overruled on other grounds by State v. LePage*, 102 Idaho 387, 396, 630 P.2d 674, 683 (1981); *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct.App.2007).

Only the two most serious misstatements of the evidence will be described here. The first came as the prosecutor was asserting that Contreras–Gonzales was the person known as "Carlos," the name that was vaguely claimed by the State to be attached to the ringleader of the drug operation. To support this proposition, the prosecutor repeatedly misstated the trial evidence. Although the manager/owner of the motel where Contreras–Gonzales was arrested was unable at trial to identify Contreras–Gonzales as the person who registered at the motel as "Carlos," or even as one of the individuals who used the room, during closing argument the prosecutor told the jury that the motel manager had identified Contreras–Gonzales as Carlos.

The prosecutor also misrepresented evidence about Contreras–Gonzales' proximity to the methamphetamine in the motel room. The police had found the substance in the sleeve of a black nylon coat lying on a bed. During closing argument, the prosecutor suggested that the jury should impute possession of the methamphetamine to Contreras–Gonzales because he had been in closest proximity to the black coat. She claimed that an officer had testified to seeing Contreras–Gonzales rise from the bed where the coat was lying, but there was no such testimony.

■ Although we do not approve or condone such misrepresentations of trial testimony, we are unable to say that they rise to the level of fundamental error because a timely objection and a curative jury instruction could have mitigated any ensuing prejudice and probably would have prevented the continuation of the misconduct. Contreras–Gonzales made no objection below and has therefore waived the issue for appeal. Although the trial court would have been justi-

fied in intervening *sua sponte* under such circumstances, we will not deem its failure to do so fundamental error.

Contreras–Gonzales next argues that the prosecutor disparaged Contreras–Gonzales' attorney and the role of defense counsel generally. It is misconduct for the prosecution to make personal attacks on defense counsel in closing argument. *Sheahan,* 139 Idaho 267, 77 P.3d 956; *State v. Page,* 135 Idaho 214, 223, 16 P.3d 890, 899 (2000); *State v. Brown,* 131 Idaho 61, 69, 951 P.2d 1288, 1296 (Ct.App.1998); *Baruth,* 107 Idaho at 657, 691 P.2d at 1272. Contreras–Gonzales complains that in rebuttal argument, the prosecutor asserted that defense counsel had attempted to "deflect [the jury's] attention from the important things," "muddy the waters," and "distract [the jury] from your job." These remarks are similar to, but less inflammatory than those at issue in *Sheahan,* where the prosecutor accused defense counsel of trying to hide the facts and to mislead the jury. The Supreme Court in *Sheahan* held that although these comments were improper, they did not rise to the level of fundamental error. *Sheahan,* 139 Idaho at 281, 77 P.3d at 970. Likewise, in *Brown,* 131 Idaho at 69, 951 P.2d at 1296, we held that a prosecutor's statement that defense counsel should have been an actor was improper, but not so egregious that any resulting prejudice could not have been avoided by a timely objection and an appropriate curative instruction from the trial court. Such is the case here. Rather than actually disparaging defense counsel, the prosecutor's statements suggest that defense counsel was trying to misdirect the jury by focusing on unimportant matters. In context, it appears that the prosecutor was merely trying to draw the jury's attention to the critical elements of the case that it should be examining. Fundamental error has not been shown.

Next, during the defense's closing argument, counsel argued that one of the State's witnesses was not credible because he was a drug addict. In rebuttal, the prosecutor responded that, in light of the fact that Contreras–Gonzales was on trial for drug trafficking, his attorney's argument was "rich" and hypocritical. Contreras–Gonzales contends that, by suggesting that he should not be heard to complain about drug-addicted witnesses because his own crime was more significant, the prosecutor undermined the presumption of innocence to which Contreras–Gonzales was entitled. In other words, Contreras–Gonzales contends that the prosecutor was asking the jury to presume his guilt of the charge in evaluating the evidence against him. To the extent that this was misconduct, we do not view it as constituting fundamental error that could not have been corrected by an objection and an instruction to the jury.

Lastly, Contreras–Gonzales contends that the prosecutor improperly implied that he had a lengthy criminal record when she responded to defense counsel's criticism of the prosecutor for displaying Contreras–Gonzales' mug shot (as opposed to a better picture) during the trial. In her rebuttal, the prosecutor stated, "There is a reason that the state only has photographs of the defendant while he's incarcerated, because that is the only contact that the state has had with him." Contreras–Gonzales argues that this would have led the jury to conclude that he had a lengthy criminal record. We are unpersuaded. A comment that the State had contact with Contreras–Gonzales only during his incarceration does not imply that he had a criminal history beyond the present charge. This statement did not constitute prosecutorial misconduct.

## III.

## CONCLUSION

Because the district court did not make factual findings concerning the existence or validity of Contreras–Gonzales' waiver of his Sixth Amendment right to counsel at the March 9 interview, we vacate the district court's order concerning that interview and remand for further findings on the suppression motion. In the event that the district court finds on remand that there was no

valid waiver, Contreras–Gonzales' judgment of conviction must be vacated and a new trial conducted. Contreras–Gonzales' other claims of error in the trial proceedings were not preserved by a timely objection in the trial court or are without merit. The case is remanded to the trial court for further proceedings consistent with this opinion.

Judge PERRY and Judge Pro Tem SCHWARTZMAN concur.