951 P.2d 1288

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Alan Travis BROWN, Defendant–Appellant.**

No. 22542.

Court of Appeals of Idaho.

Jan. 2, 1998.

Scott L. Rose, Post Falls, for defendant-appellant.

Alan G. Lance, Attorney General, L. LaMont Anderson, Deputy Attorney General (argued), Boise, for plaintiff-respondent.

LANSING, Chief Judge.

Alan Travis Brown appeals from his judgment of conviction entered after a jury found him guilty of lewd conduct with a minor and sexual abuse of a child. He contends that the court made errors in the admission and exclusion of evidence, that the prosecutor engaged in misconduct during closing argument, that the evidence does not support the jury's findings, and that in sentencing Brown the trial court penalized him for exercising his right to a trial.

### FACTS AND PROCEDURAL BACKGROUND

According to evidence presented by the State at trial, Brown first met the fifteen-year-old female victim, H.M., at a party on Sunday, July 30, 1994. H.M. had just run away from home. Brown provided drugs and alcohol to H.M. at the party. Over the next several days, H.M. and Brown remained together off and on, staying at a motel and at various residences in the Coeur d'Alene area. During this period Brown continued to give H.M. drugs and alcohol. On the following Friday, a private investigator located H.M. and returned her to her mother.

The next day, H.M.'s mother drove H.M. to Boise and placed her in an in-patient drug and alcohol treatment facility. Approximately one month later, in the course of treatment, H.M. asserted that Brown had raped her. A criminal complaint was filed against Brown on December 2, 1994, charging him with nine counts of rape, I.C. § 18–6101, and two counts of lewd conduct with a minor, I.C. § 18–1508.

The jury acquitted Brown of the nine rape charges but found him guilty of four counts of the included offense of lewd conduct with a minor and three counts of the lesser included offense of sexual abuse of a child. For each of the lewd conduct offenses, the court imposed a unified fifteen-year sentence with a determinate term of seven years. On the sexual abuse counts, Brown was given unified ten-year sentences with seven-year determinate terms. It was ordered that the sentences run concurrently.

### ANALYSIS

#### A. Admission of Panties and Scientific Test Results

The first issue raised by Brown on appeal is whether the district court erred in admitting into evidence a pair of green panties, allegedly worn during the time the victim was with Brown, and the lab reports showing that the panties tested positive for the presence of semen. Brown argues that an inadequate foundation was laid for this evidence, that the evidence was irrelevant and more prejudicial than probative, and that it should have been excluded due to the prosecutor's failure to make a timely disclosure of this evidence in discovery responses.

### 1. Foundation

With respect to the foundation issue, Brown asserts that the State could not establish an adequate chain of custody of the clothing, and consequently it could not be determined that the evidence was free from tampering.

At trial, H.M.'s mother testified that upon returning home after taking H.M. to Boise for treatment, and being already suspicious that H.M. had been sexually molested, she gathered up some of the clothes on the floor of H.M.'s bedroom and placed them in a paper bag. She then placed the clothes in the trunk of her car, where they remained for several days. The items were then transferred to a storage unit and remained there until they were turned over to police in December of 1994. These items were subsequently subjected to laboratory testing, which identified a small amount of semen on a pair of green panties. At trial, H.M. testified that she had borrowed the green panties from a friend during the time when she was with Brown and that she was wearing them when she was brought home by the private investigator. She said they appeared to have been freshly laundered when she borrowed them. She left the panties on her bedroom floor along with other clothing removed that evening. H.M.'s mother testified she observed the clothing that H.M. had dropped on the floor that Friday night, and when she gathered up the clothing on the following Monday or Tuesday, it appeared to be in the same condition.

Brown contends that H.M.'s testimony about the panties was unreliable because she had made numerous inconsistent statements about the clothing she wore during the runaway period, and that it is impossible to determine whether the clothing was in the same condition when tested as it was on the day of H.M.'s return. He argues that the clothing was not secure from tampering, particularly during the few days when H.M.'s mother was away in Boise and other members of the household had access to the clothing.

In a criminal action, physical evidence of this nature must be shown to be in substantially the same condition when offered as it was when the crime was committed. *State v. Griffith*, 94 Idaho 76, 81, 481 P.2d 34, 39 (1971); *State v. Kodesh*, 122 Idaho 756, 757, 838 P.2d 885, 886 (Ct.App. 1992). The article need not be in precisely the same condition at the time of trial as at the time when it played a role in the occurrence of the alleged offense, but if its condition has changed, the change must not have been made for unjustifiable purposes and it must not be of sufficient magnitude that the exhibit will mislead. *Griffith, supra.* It is not necessary that the party offering the exhibit exclude all possibility of tampering. Rather, the standard for admission of the evidence is whether the trial court is satisfied that, in all reasonable probability, the exhibit has not been changed in any material respect. *State v. Crook*, 98 Idaho 383, 384, 565 P.2d 576, 577 (1977); *State v. Vierra*, 125 Idaho 465, 469, 872 P.2d 728, 732 (Ct.App. 1994); *State v. Sena*, 106 Idaho 25, 674 P.2d 454 (Ct.App.1983). This determination falls within the sound discretion of the trial court. *State v. Hagedorn*, 129 Idaho 155, 161, 922 P.2d 1081, 1087 (Ct.App.1996); *Kodesh*, 122 Idaho at 757, 838 P.2d at 886. We review this determination for an abuse of discretion. *State v. Wilson*, 120 Idaho 643, 646, 818 P.2d 347, 350 (Ct.App.1991).

In this case, there was sufficient evidence upon which the district court could determine that the panties probably were worn by H.M. while she was a runaway and had not been altered in any material respect. Although people may have had access to the clothing before H.M.'s mother gathered it from the bedroom floor, there was no evidence which would raise suspicion that the clothes had been tampered with. Accordingly, we find no error in the district court's admission of the panties over Brown's objection that the foundation was inadequate.

### 2. Relevance

Brown also objected that neither the panties nor the test result finding traces of

semen was relevant. The tests did not indicate whether the semen was from Brown because there was an insufficient amount present to determine genetic markers. According to Brown, the State's inability to scientifically link the semen to him rendered the evidence entirely irrelevant. This argument is without merit.

A similar contention was presented in *State v. Roles*, 122 Idaho 138, 832 P.2d 311 (Ct.App.1992). In that case, the State charged that the defendant had used certain objects to forcibly penetrate the victim during the course of a rape. The two objects tested positive for blood, but the amount of blood was insufficient to conduct blood-group testing or even to allow the State's forensic expert to conclude that the blood was from a human. This Court held that the prosecution's inability to trace the blood to a particular individual or even a particular species did not make it irrelevant. It was held that the lack of more specific identification went to the weight of the evidence and not its admissibility. *Id.* at 148, 832 P.2d at 321.

Similarly here, the presence of semen, though not conclusive evidence of Brown's guilt, tended to corroborate H.M.'s allegations that she had been subjected to multiple incidents of sexual molestation. The evidence had a "tendency to make the existence of [a] fact that [was] of consequence to the determination of the action more probable." *See* I.R.E. 401. Therefore, the trial court properly overruled Brown's relevancy objection.

### 3. Probative value versus unfair prejudice

■ Closely tied to the other arguments regarding the clothes is Brown's assertion that the clothing and test results should have been excluded from evidence under I.R.E. 403 because they were more prejudicial than probative. Brown argues that the probative value of the evidence, which was greatly diminished because it could not be tied to him and because of the lack of a secure chain of custody, was outweighed by its prejudicial impact.

Idaho Rule of Evidence 403 authorizes the trial court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." A lower court's determination whether to exclude evidence under this rule will not be disturbed on appeal unless it is shown to be an abuse of discretion. *State v. Enno*, 119 Idaho 392, 406, 807 P.2d 610, 624 (1991); *State v. Birkla*, 126 Idaho 498, 500, 887 P.2d 43, 45 (Ct.App. 1994); *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct.App.1989).

As we said in *State v. Floyd*, 125 Idaho 651, 654, 873 P.2d 905, 908 (Ct.App.1994), "Rule 403 does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to the party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest a decision on an improper basis." In this case, Brown's arguments regarding the lack of a specific scientific test connecting him to the semen and the imperfect chain of custody all go to the weight of the evidence and may reduce its probative value. None of these factors, however, indicate that the clothing somehow created an *unfair* prejudice or would have had a tendency to motivate the jury to convict on a basis other than the evidence presented at trial. Hence, the district court did not abuse its discretion in admitting the evidence over Brown's objections under I.R.E. 403.

### 4. Discovery violations

■ Finally, Brown contends that the clothing evidence and the associated test results should have been excluded from evidence due to the prosecution's failure to timely comply with discovery rules. He argues that the prosecutor violated Brown's right to a fair trial by concealing the existence of the clothing for nearly eight months and that this intentional delay in disclosing the information seriously prejudiced Brown's ability to present a defense. We cannot properly address this issue, however, as it is raised for the first time on appeal. Although Brown repeatedly opposed the introduction of the clothing evidence on various grounds,

he did not seek its exclusion based on the prosecutor's alleged discovery violation.

It is a longstanding rule in Idaho that issues which were not raised in the trial court will not be considered for the first time on appeal. *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991); *Kinsela v. State, Dep't of Finance*, 117 Idaho 632, 634, 790 P.2d 1388, 1390 (1990); *State ex rel. Evans v. Click*, 102 Idaho 443, 449, 631 P.2d 614, 620 (1981). According to the Idaho Supreme Court, one rationale for the rule is the protection of trial courts.

> It is manifestly unfair for a party to go into court and slumber, as it were, on [a] defense, take no exception to the ruling, present no point for the attention of the court, and seek to present [the] defense, that was never mooted before, to the judgment of the appellate court. Such a practice would destroy the purpose of an appeal and make the supreme court one for deciding questions of law in the first instance.

*Sanchez*, 120 Idaho at 322, 815 P.2d at 1062 (quoting *Smith v. Sterling*, 1 Idaho 128, 131 (1867)). In addition, allegations of a discovery violation or the existence of any prejudice arising therefrom often encompass factual issues which can only be resolved upon the presentation of the pertinent evidence to the trial court. An appellate record of proceedings not directed to alleged discovery violations seldom provide a suitable basis for appellate determination of such claims. Consequently, we are unable to consider Brown's argument that discovery abuses by the prosecutor warranted the exclusion of evidence.

**B. Exclusion of Letter Written by Victim**

Brown next challenges the district court's refusal to admit into evidence a letter written by H.M. to a friend during the course of her in-patient drug and alcohol treatment. The letter states that while in treatment, H.M. had revealed instances of past sexual abuse. The letter identifies two people who sexually abused H.M. when she was four years old. The letter does not mention Brown as one of her abusers. Brown sought admission of the letter to impeach H.M.'s testimony that he had raped her. He asserted that the letter was relevant because H.M.'s failure to mention him while disclosing past sexual abuse was an indication that H.M. was not molested by Brown.

The district court sustained the State's objection that the letter's reference to prior sexual abuse of H.M. was inadmissible under I.R.E. 412, which precludes admission of evidence of past sexual behavior of the alleged victim of a sex crime, except in limited circumstances. The court also held that, even if the letter was not inadmissible under I.R.E. 412(a), it would be excluded under I.R.E. 412(c)(3) and I.R.E. 403 on the ground that its probative value was outweighed by the danger of unfair prejudice and confusion of the issues.

On appeal Brown asserts that the district court was mistaken in concluding that I.R.E. 412 precludes admission of the letter. Brown argues that the rule does not apply to non-consensual sexual experiences. Being the victim of prior sexual abuse, he urges, is not "past sexual behavior" of the victim. Brown also asserts that if Rule 412 is interpreted to apply to this evidence, its application in this case would violate his constitutional rights to due process, to confront adverse witnesses and to utilize compulsory process.

■ We find it is unnecessary to resolve the question regarding interpretation of I.R.E. 412 because, even if the letter was not made inadmissible by that rule, the district court properly excluded it under Rule 403, which allows the exclusion of relevant evidence if its probative value is substantially outweighed by confusion of the issues or misleading the jury, waste of time or needless presentation of cumulative evidence. The letter in question was of marginal relevance at best. Although it mentioned some instances of alleged sexual abuse of H.M. when she was four years old, it did not purport to be a complete cataloging of all of her experiences of sexual mistreatment.

Therefore, any exculpatory inference to be drawn from the letter's failure to mention Brown as a sexual abuser is tenuous. As a vehicle for impeachment of H.M.'s testimony as to the forcible nature of the sexual encounters with Brown, the letter would have been merely cumulative evidence. The defense was able to introduce substantial evidence discrediting H.M.'s characterization of the encounters between her and Brown as forcible and non-consensual, and it is apparent from the verdict that the jury did not believe all the details of H.M.'s account. The four-page letter contains many statements that could have led to confusion of the issues, including an assertion by H.M. that her mother was mentally ill. Accordingly, we find no abuse of discretion in the district court's exclusion of the evidence under Rule 403.

■ Brown also maintains that his constitutional rights were infringed by the exclusion of this evidence, but he has provided no meaningful supporting argument, and we perceive no constitutional violation. As we stated in *State v. Peite*, 122 Idaho 809, 814, 839 P.2d 1223, 1228 (Ct.App.1992):

> The right to present relevant testimony "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973).... "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986).

*Id.* at 814, 839 P.2d at 1228, (quoting *Wood v. Alaska*, 957 F.2d 1544, 1549 (9th Cir.1992)). *See also State v. Downing*, 128 Idaho 149, 911 P.2d 145 (Ct.App.1996).

■ Finally, we are persuaded that any error in the exclusion of the letter was harmless. An error in an evidentiary ruling in a criminal trial will be deemed harmless if the appellate court is convinced beyond a reasonable doubt that the jury would have reached the same result absent the error. *State v. LePage*, 102 Idaho 387, 393–96, 630 P.2d 674, 680–83 (1981); *State v. Boman*, 123 Idaho 947, 950–51, 854 P.2d 290, 293–94 (Ct. App.1993). For the offenses on which Brown was found guilty, force is not an element of the crime and consent by the victim is not a defense. The State's case included significant evidence corroborating H.M.'s testimony that sexual contact occurred. This included other witnesses' testimony that Brown and H.M. stayed together in a motel and repeatedly spent time together in the motel bathroom, where H.M. testified that several of the offenses occurred. Other witnesses confirmed that H.M. and Brown were together throughout the week in question, and evidence of the semen on H.M.'s panties corroborated sexual contact. As observed above, any exculpatory inference that could be drawn from the letter would have been of marginal probative value to rebut the State's evidence. Consequently, this Court is convinced beyond a reasonable doubt that the jury's verdict would not be different had the letter been introduced.

## C. Prosecution's Closing Arguments

Brown challenges as improper several comments made by the prosecutor during his closing argument. Brown alleges that, although he did not object to most of these comments, their cumulative effect was such that he was deprived of a fair trial.

■ The failure to object to improper argument in the trial court normally is a waiver of the right to raise such an issue on appeal. Nonetheless, the issue will not be deemed waived "[w]here the record shows that the prosecuting attorney has been guilty of misconduct calculated to inflame the minds of jurors and arouse prejudice or passion against the accused by statements in his arguments of facts not proved by evidence...." *State v. Spencer*, 74 Idaho 173,

183–84, 258 P.2d 1147, 1154 (1953). *See also State v. Higgins,* 122 Idaho 590, 600, 836 P.2d 536, 546 (1992); *State v. Sharp,* 101 Idaho 498, 503, 616 P.2d 1034, 1039 (1980); *State v. Baruth,* 107 Idaho 651, 656, 691 P.2d 1266, 1271 (Ct.App.1984). The rationale of this rule is that even a timely objection to such inflammatory statements would not have cured the inherent prejudice. *Higgins, supra; Sharp, supra.*

■ We will consider first Brown's contention that the prosecutor misstated the facts as shown by the evidence. Our review of the record discloses that, although some of these statements are slightly inaccurate and the prosecutor did not use quite the same words as the witnesses in describing events covered by the testimony, any such variances were minor, and none were significant enough to have any bearing on the outcome of the trial. The slight inaccuracies do not appear to have been calculated to inflame the jurors or arouse passion or prejudice against the defendant. Indeed, the prosecutor frequently admonished the jury that his recollection of the evidence might not be quite the same as theirs and that in such an event they should rely upon their own memories. Accordingly, we conclude that any complaint about these prosecutorial misstatements was waived by failure to object at trial.

■ Brown next refers to several instances where he believes the prosecutor made disparaging remarks about defense counsel. Brown correctly asserts that it is misconduct for the prosecutor to mock or disparage the defense attorney in closing arguments. *Baruth,* 107 Idaho at 657, 691 P.2d at 1272. However, on review of the prosecutor's argument in this case, we find that most of the comments cited by Brown did not disparage or mock defense counsel but were fair responses to Brown's attacks on the victim's credibility. The prosecutor did, however, engage in improper ridicule of defense counsel when he said, "He should have been an actor, don't you think?" We do not, however, perceive this comment to be so egregious that any resulting prejudice could not have been avoided by a timely objection and an appropriate curative instruction from the trial court. Therefore, we will not consider it as a basis for reversal on appeal.

■ Brown also asserts that on several occasions in closing argument, the prosecutor stated his own opinion about controverted matters. Idaho courts have long condemned the interjection of personal belief or opinion in a prosecuting attorney's statements to a jury in a criminal case. *State v. Pizzuto,* 119 Idaho 742, 753, 810 P.2d 680, 691 (1991); *State v. Garcia,* 100 Idaho 108, 111, 594 P.2d 146, 149 (1979). This rule, however, "is tempered by the general policy that counsel for both sides have 'the right to discuss fully, from their respective standpoints, the evidence and the inferences and deductions arising therefrom.'" *State v. Rosencrantz,* 110 Idaho 124, 131, 714 P.2d 93, 100 (Ct.App. 1986) (quoting *State v. Sistrunk,* 98 Idaho 629, 630, 570 P.2d 866, 867 (1977)). Having examined the comments of the prosecutor cited by Brown as impermissible expressions of personal opinions, we conclude that most were within the bounds of permissible argument and, to the extent that any of the statements contained expressions of the prosecutor's personal opinions, the error could have been readily rectified by a timely objection and curative instruction. The statements do not imply that the prosecutor had personal knowledge from information outside of the evidence presented at trial, nor were the statements inflammatory in nature. Therefore, we conclude that any error was waived by Brown's failure to object during the trial.[1]

■ Brown also challenges two statements made by the prosecution which he alleges improperly commented upon Brown's failure to testify at trial. It is clearly erroneous for the prosecution to comment to the jury about the defendant's decision not to testify. *Chapman v. California,* 386 U.S. 18,

1. We also observe that during his own closing argument, defense counsel repeatedly expressed his personal views of the evidence and his opinions of witnesses' credibility.

25, 87 S.Ct. 824, 828–29, 17 L.Ed.2d 705 (1967); *Griffin v. California*, 380 U.S. 609, 613, 85 S.Ct. 1229, 1232, 14 L.Ed.2d 106 (1965); *State v. Hodges*, 105 Idaho 588, 591, 671 P.2d 1051, 1054 (1983). In this case, however, the statements of which Brown complains do not appear to refer to Brown's failure to testify at trial. It is apparent that the prosecutor was commenting upon recorded statements that Brown gave to an investigating officer before Brown's arrest. It was not inappropriate argument.

■ More troublesome is Brown's contention that the prosecutor engaged in misconduct by requesting that the jury convict Brown to prevent him from committing future crimes. It is undoubtedly improper for a prosecutor to raise the specter of possible future criminality of the defendant as a reason for the jury to return a guilty verdict. *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct.App.1991); *Baruth*, 107 Idaho at 656, 691 P.2d at 1271. Such a prediction of future offenses is not a "fact" proven by the evidence and hence not an appropriate subject for the jury's decision or counsel's argument. *Id.*

■ Brown contends that the prosecutor violated this rule with the following statement: "When we spoke first, everybody agreed that the defendant deserved a fair trial and a fair shake and the State deserved a fair trial and a fair shake and, by God, [H.M.] deserves a fair trial and a fair shake *as does the next [H.M.]*." Brown's counsel made an immediate objection, which the trial court initially overruled. However, within minutes of the conclusion of the argument, the trial court informed counsel that after reviewing pertinent authority, it was convinced that Brown's objection should have been sustained. The court offered to give the jury a cautionary instruction. Brown's counsel, however, declined the offer, fearing that an instruction would only draw more attention to the prosecutor's improper comment.

We agree with Brown that the italicized portion of the prosecutor's statement impermissibly alluded to the risk of future sexual offenses against young girls by Brown. Further, for purposes of this analysis we will assume that defense counsel was correct in concluding that a curative instruction would not have diminished whatever effect the prosecutor's improvident comment may have had on the jury but would only have emphasized it.

■ However, our conclusion that this component of the closing argument constituted prosecutorial misconduct is not the end of our inquiry. Such misconduct will require the reversal of a judgment of conviction only if it was prejudicial error. *Garcia*, 100 Idaho at 111, 594 P.2d at 149; *Baruth*, 107 Idaho at 658, 691 P.2d at 1273. Any error or defect in a criminal trial that does not affect substantial rights will not necessitate a new trial. I.C.R. 52; *Pizzuto*, 119 Idaho at 754, 810 P.2d at 692. The purpose of this harmless error doctrine is to avoid "setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the results of the trial." *Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705, (1967). *See also Garcia*, 100 Idaho at 111, 594 P.2d at 149; *Reynolds*, 120 Idaho at 451 n. 5, 816 P.2d at 1008 n. 5. Where prosecutorial misconduct is shown, the test for harmless error is whether the appellate court can conclude, beyond a reasonable doubt, that the result of the trial would not have been different absent the misconduct. *Reynolds*, 120 Idaho at 451, 816 P.2d at 1008 (Ct.App.1991); *Baruth*, 107 Idaho at 658, 691 P.2d at 1273.

■ We are persuaded that the prosecutor's transgression in this case was harmless. Although the evidence of Brown's guilt cannot be characterized as overwhelming, we are confident beyond a reasonable doubt that the prosecutor's comment was not influential upon the jury. It was not a direct assertion that Brown presented a threat of future criminal activity, but a subtle and indirect allusion. It was not a lengthy, impassioned or particularly provocative statement, but a mere five words. We perceive no reasonable

possibility that these five nuanced words inflamed the jury or led it to a decision based upon considerations other than the evidence that had been presented over the course of a five-day trial. Accordingly, we hold that this prosecutorial misconduct does not entitle Brown to a new trial.[2]

### D. Proposed Jury Instruction No. A

Brown next argues that the district court erred by refusing to give his proposed jury instruction No. A. That instruction stated:

> Alan Brown denies that he committed the crime of which he is accused. He maintains that he befriended [H.M.], and the allegations of rape were fabricated by [H.M.] out of obedience to her mother whom [H.M.] fears. Alan Brown maintains that [H.M.] had numerous opportunities during the period of time she alleges she was sexually assaulted to notify the authorities, escape from danger or seek assistance, and she never made any complaint. Alan Brown further maintains that no relevant, credible physical evidence corroborating [H.M.'s] charges exists.

■■■■ A trial judge must charge the jurors with "all matters of law necessary for their information." I.C. § 19–2132(a); *State v. Fetterly*, 126 Idaho 475, 476, 886 P.2d 780, 781 (Ct.App.1994); *State v. Spurr*, 114 Idaho 277, 279, 755 P.2d 1315, 1317 (Ct.App.1988). Accordingly, a defendant is entitled to instructions on rules of law material to the determination of guilt or innocence. *Fetterly, supra*. However, a trial court need not give a requested instruction if it improperly comments on the evidence. *State v. Dambrell*, 120 Idaho 532, 540, 817 P.2d 646, 654 (1991); *State v. Johns*, 112 Idaho 873, 880–81, 736 P.2d 1327, 1334–35 (1987). The question whether a particular instruction is necessary is a matter of law over which we exercise free review. *State v. Gleason*, 123 Idaho 62, 844 P.2d 691 (1992).

■■ The instruction offered by Brown merely states his factual contentions. It does not set forth any relevant law or provide the jurors with any necessary legal instruction to guide their deliberation. It is, instead, an inappropriate comment on the evidence. Therefore, the instruction was correctly rejected by the trial court.

### E. Sufficiency of the Evidence

■■■ We next consider Brown's argument that the State's evidence was insufficient to prove his guilt. Brown frames this issue as a question of error in the district court's denial of his motion for a judgment of acquittal at the conclusion of the State's case. However, by presenting evidence in defense at trial, Brown waived any right to appellate review of the sufficiency of the evidence at the conclusion of the State's case. *State v. Watson*, 99 Idaho 694, 698, 587 P.2d 835, 839 (1978); *State v. Hughes*, 130 Idaho 698, 946 P.2d 1338 (Ct.App.1997). This Court, therefore, will conduct a review of all of the trial evidence, including that offered by Brown, to determine whether it is sufficient to support the jury's verdict. *Id.*

A jury finding that the defendant is guilty of a crime will not be disturbed if there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Ashley*, 126 Idaho 694, 696, 889 P.2d 723, 725 (Ct.App.1994). We do not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, or the reasonable inferences to be drawn from the evidence. *Id.; State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct.App.1985). If, after viewing the evidence in the light most favorable to the prosecution, we conclude

2. Brown also alleges that at one point in his closing the prosecutor pointed his finger at Brown and bellowed "rapist—rapist—rapist." The trial transcript does not contain such a comment, and Brown's motion to have the appellate record augmented with a tape recording of the closing argument was denied by the Idaho Supreme Court. Without evidence that such conduct actually occurred, we are precluded from considering this issue.

that the evidence is insufficient to support the guilty verdict, the judgment must be reversed. *State v. Warden*, 97 Idaho 752, 754, 554 P.2d 684, 686 (1976); *State v. Whiteley*, 124 Idaho 261, 270, 858 P.2d 800, 809 (Ct.App.1993).

Brown's argument is based, in part, upon the premise that the clothing evidence offered at trial was inadmissible. We have ruled to the contrary. The remainder of his argument is based upon his view that H.M.'s testimony was not credible. Because we do not substitute our view of a witnesses' credibility for that of the jury, this argument is not persuasive. As the State points out, in sexual assault cases the testimony of the victim, even without further corroboration, is sufficient evidence to sustain a guilty verdict. *State v. DeGrat*, 128 Idaho 352, 913 P.2d 568 (1996); *State v. Byers*, 102 Idaho 159, 627 P.2d 788 (1981). In any event, there was evidence which corroborated H.M.'s story, as discussed above. In addition, the jury heard tape recordings of two pre-arrest police interviews of Brown in which he gave inconsistent accounts of his contact with H.M. Testimony from other witnesses contradicted both of Brown's versions while corroborating H.M.'s testimony regarding the amount of time that H.M. and Brown spent together. We hold that there was sufficient evidence to support the verdict.

## F. Vindictiveness In Sentencing

Brown was sentenced to fifteen-year terms of imprisonment with seven years fixed on each of the lewd and lascivious counts and ten-year terms with seven years fixed on each of the sexual abuse counts. All the sentences run concurrently. Brown asserts that these sentences were imposed vindictively to penalize him for exercising his right to plead not guilty and to put the State to its proof at trial.

In *State v. Regester*, 106 Idaho 296, 678 P.2d 88 (Ct.App.1984), this Court considered a defendant's claim of vindictiveness in sentencing. There, we adopted a "totality of the circumstances" test, which requires an examination of the entire record when a defendant claims that comments by the court reveal a vindictive motive for a particular sentence. We rejected the "per se" approach followed by some courts, which requires that a sentence be vacated whenever comment was made by the trial court that implies the defendant is being punished for exercising his right to plead not guilty. In *Regester*, we ultimately concluded that the trial court's comments, when viewed in the context of the entire record, did not display a vindictive or punitive motive on the part of the sentencing judge, but rather were based on appropriate concerns about the defendant's sincerity in his desire to reform his conduct. *Regester*, 106 Idaho at 302, 678 P.2d at 94.

In this case, Brown contends that the following comments show that the district court was motivated by a desire to penalize Brown for exercising his right to a trial:

> With regard to retained jurisdiction, the court declines to retain jurisdiction in this case and the defendant will serve not less than seven years in prison.

> Mr. Brown, the reason that I have done that is that in July of 1994, not only did you use real bad judgment, it's my determination that the evidence is at least shown by a preponderance of the evidence that you have attempted to manipulate the system by the presentation at the preliminary hearing. And I have throughout this trial heard through many different motions and hearings your professed innocence and a story that this whole charge was concocted by [H.M.'s mother]. And I want you to know that I find absolutely no evidence to support any such allegation and not for a minute when it was all said and done, and I have seen all of the evidence, did I ever entertain any belief that [H.M.'s mother] put [H.M.] up to falsely accusing you.

> Had you admitted your guilt at some point in this Court proceeding, you had an excellent chance, having acknowledged responsibility for these acts of having the benefit of the Cottonwood program. And you had that opportunity all the way up to

just a few moments ago and you have not taken responsibility for these acts and you've had repeated opportunities to do so. You want to maintain your innocence, that's fine. The evidence shows otherwise. And you have to suffer the consequence. You have to learn that it's not just one thing to abuse a young lady, it is another thing to abuse the justice system. I find that you have abused the justice system and you are paying a consèquence because of that.

Our review of the record adds a good deal of context to the statements made by the court. The court's statements regarding the preliminary hearing and Brown's abuse of the legal system are obvious references to testimony offered by Brown's witnesses at the preliminary hearing that the court found to be inherently incredible and believed to be blatant perjury. The district court was convinced that Brown had arranged for this testimony and, in so doing, had "abused the justice system." The court's comments about accepting responsibility expressed its conclusion that because Brown was not willing to accept responsibility for his actions, even after the jury's verdict, he was not a good candidate for rehabilitation through the retained jurisdiction program in the North Idaho Correctional Institution at Cottonwood. It is not improper for a trial court to consider a defendant's failure to accept responsibility in determining whether rehabilitation efforts would be fruitful. *State v. Smith*, 127 Idaho 632, 903 P.2d 1329 (Ct.App. 1995). *See also State v. Wheeler*, 129 Idaho 735, 932 P.2d 363 (Ct.App.1997); *State v. Fertig*, 126 Idaho 364, 883 P.2d 722 (Ct.App. 1994). Having reviewed the record, and applying the "totality of the circumstances" test prescribed in *Regester*, we conclude that Brown's sentences include no vindictive or punitive aspect to punish his exercise of his right to a trial.

## CONCLUSION

We find no error in the trial court's evidentiary rulings at trial. We decline to review most of Brown's assertions of prosecutorial misconduct during closing argument because he made no objections to the comments in the trial court and the prosecutor's conduct was not so egregious or inflammatory as to warrant appellate review when the issue was not raised below. We have found one incident of impropriety in the prosecutor's closing argument to which Brown made a timely objection, but we conclude that the misconduct was harmless error. We have found meritless Brown's contentions that the court erred in rejecting one of his proposed jury instructions and that the evidence of guilt is insufficient to support the jury's verdict. We have also determined that the record does not support Brown's contention that the district court, in sentencing, penalized Brown for the exercise of his right to a trial.

Accordingly, the judgment of conviction and sentences are affirmed.

PERRY, J., and WALTERS, Acting J., concur.