## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 38500

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2013 Unpublished Opinion No. 681 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: September 25, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| MICHAEL ALFARO aka MICHAEL | ) | THIS IS AN UNPUBLISHED |
| ALFANO, MICHAEL ALFARA, | ) | OPINION AND SHALL NOT |
| | ) | BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Thomas J. Ryan, District Judge.

Judgment of conviction and sentences for aiding and abetting first degree murder, two counts of aiding and abetting aggravated assault, and aiding and abetting unlawful discharge of a firearm at a dwelling, and sentence enhancement for infliction of great bodily injury, affirmed.

Robyn Fyffe of Nevin, Benjamin, McKay & Bartlett LLP, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Daphne J. Huang, Deputy Attorney General, Boise, for respondent. Daphne J. Huang argued.

_____

PERRY, Judge Pro Tem

Michael Alfaro appeals from his judgment of conviction and sentences for aiding and abetting first degree murder, two counts of aiding and abetting aggravated assault, and aiding and abetting unlawful discharge of a firearm at a dwelling, and his sentence enhancement for infliction of great bodily injury. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

In the summer of 2004, Caldwell experienced a spate of drive-by shootings between rival gangs. One shooting occurred at approximately 3:30 a.m. on August 14, 2004, while Javier "Harvey" Rodriguez, Sael Castillo, Jason Alverado and Carlos Chavez, all associated with the "Westside Lomas" (Westside) gang, were at Rodriguez's house. A vehicle drove by, and two of

its passengers began shooting at the house, resulting in Chavez being killed. It was the third shooting investigated by Caldwell police that night alone.

When police arrived on the scene they found various bullet casings in the area, but the bullet that killed Chavez could not be tied to a particular weapon. One neighbor reported seeing a blue car speed away after the shooting, while another described a light tan car with three occupants. Rodriguez told the police he arrived at the house mere moments before the shooting and that Castillo and Alverado were outside in front of the house and Chavez was inside at the time. He could not describe the vehicle from which the shots had been fired and was generally uncooperative in aiding the investigation. After interviewing over 100 people in relation to Chavez's death, the police never recovered a weapon, never identified the vehicle, and had no suspects.

In June 2005, Evan Musquiz, a teenager associated with the "Eastside Locos" (Eastside) gang, who was thirteen years old at the time of Chavez's shooting, told police he had been in a light blue four-door car with other Eastsiders, Arandu Maceda, Richard Alaniz, and a person he only knew as "Mike" who was driving. Musquiz stated the four had driven around for a while and then drove by a residence where Maceda and Alaniz opened fire, shooting at the house and the men in front of the house. Musquiz was shown a six person photo lineup, in which Alfaro was number three, and indicated "Mike" was either two or three. Musquiz could not identify the time of year or the time of day the shooting had taken place, other than to say it was dark. When police provided Musquiz with the location of Rodriguez's house and asked whether it was the location of the shooting, Musquiz said yes. Following Musquiz's interview, Alaniz denied any involvement in the shooting.

In June 2009, another Eastside gang member, Mario Flores, was charged with multiple felonies, including recruiting gang members, supplying firearms, and witness intimidation. Police questioned him as to whether he had any knowledge pertaining to Chavez's death, which he had denied possessing when interviewed shortly after the shooting. This time, Flores told police he had observed Maceda and Musquiz getting into a black Cadillac with Alfaro and Alaniz on the night of August 14, 2004. In exchange for his cooperation, all charges against Flores were dismissed.

On August 6, 2009, a grand jury indicted Alfaro for charges stemming from the August 2004 shooting that caused Chavez's death. An amended indictment charged Alfaro with

aiding and abetting first degree murder, Idaho Code §§ 18-4001, 18-4002, 18-4003, or alternatively, involuntary manslaughter, I.C. §§ 18-4006(2), 18-4007, 18-204; two counts of aiding and abetting aggravated assault, I.C. §§ 18-901(a), 18-905(a), 18-204; aiding and abetting unlawful discharge of a firearm at a dwelling, I.C. §§ 18-3317, 18-204; and a sentence enhancement for inflicting great bodily injury, I.C. § 19-2520B.

A five-day jury trial commenced on October 12, 2010. Musquiz, Flores, Alaniz, Rodriguez, and Castillo all testified, providing accounts of the shooting that often conflicted with each other.[1] Musquiz and Alaniz identified Alfaro as the driver. The jury found Alfaro guilty of aiding and abetting first degree murder, both counts of aiding and abetting aggravated assault, and aiding and abetting unlawful discharge of a firearm at a dwelling; the district court found the sentence enhancement for infliction of great bodily injury applicable. The district court entered a judgment of conviction and sentenced Alfaro to a unified term of life, with twenty years determinate, for the murder conviction and five years determinate for each remaining count, with all sentences to run concurrently. Alfaro now appeals his judgment of conviction and sentences.

## II.

## ANALYSIS

### A. Prosecutorial Misconduct

Alfaro contends the prosecutor committed misconduct during closing argument, violating his right to a fair trial. Specifically, he argues the prosecutor's statement during rebuttal referring to the defense's closing argument as a "red herring fishing trip," disparaged the defense's arguments to a degree amounting to prejudicial misconduct.

Although our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, the prosecutor is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct, we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.* When there has been a contemporaneous objection we determine factually if there was prosecutorial misconduct, then we determine whether the error was harmless. *Id.*; *State v. Hodges*, 105 Idaho 588, 592, 671 P.2d 1051, 1055 (1983); *State v. Phillips*, 144 Idaho 82, 88, 156 P.3d 583, 589 (Ct. App. 2007). A conviction will

---

[1] Macedo was called to the stand, but refused to testify.

not be set aside for small errors or defects that have little, if any, likelihood of having changed the results of the trial. *State v. Pecor*, 132 Idaho 359, 367-68, 972 P.2d 737, 745-46 (Ct. App. 1998).

The prosecutor's statement occurred during the State's rebuttal, where the following exchange occurred:

> [Prosecutor]: [Defense counsel] in the opening told you they weren't contesting the shooting and the death of Carlos Chavez. [Defense counsel] stood up here and told you they weren't contesting the shooting of Carlos Chavez. The only issue is [is Alfaro] the driver. Yet [defense counsel] spent the last hour contesting the details of the shooting. That's what his closing was doing.
>
> [Defense counsel]: Judge, for the record, I'll object to the characterization and as to the court's rulings previously.
>
> [Prosecutor]: We just went on an hour-long red herring fishing trip.
>
> [Defense counsel]: Same objection, Judge.
>
> [The Court]: You're allowed a continuing objection.

On appeal, Alfaro contends the prosecutor's characterization of defense counsel's "entire closing argument as a red-herring fishing trip, went beyond asking the jury to return a verdict based on evidence, instructions and permissible inferences." Rather, Alfaro contends, the prosecutor's argument "disparaged defense counsel and ridiculed Mr. Alfaro's entire defense thereby depriving him of his due process right to a fair trial."

We do not agree that the prosecutor's statement amounted to misconduct. We addressed a similar issue in *State v. Norton*, 151 Idaho 176, 187-89, 254 P.3d 77, 88-90 (Ct. App. 2011). There, Norton argued the prosecutor committed misconduct in his rebuttal closing argument by referring to the defense arguments as "red herrings and smoke and mirrors." *Id.* at 188, 254 P.3d at 89. This Court noted the prosecutor's comments were not directed at defense counsel personally, but rather were comments on the defense theories and therefore concluded the prosecutor's remark did not constitute misconduct. *Id.* at 189, 254 P.3d at 90. Although Alfaro argues otherwise, *Norton* is indistinguishable in any dispositive respect from this case. Like in *Norton*, the prosecutor's statement here was directed at the defense theories and arguments and did not amount to misconduct.

## B.    Judgment of Acquittal

Alfaro contends there was insufficient evidence to support the jury's verdict that he was the driver of the vehicle involved in the drive-by shooting resulting in Chavez's death.

4

Specifically, he contends that even viewing the evidence in the light most favorable to the prosecution, there was not sufficient evidence. Alfaro concedes the jury could have reasonably concluded that, at some point in time, Alfaro drove a vehicle carrying Alaniz, Maceda and Musquiz into Westside territory where Alaniz and Maceda shot at Rodriguez's residence and the men outside. However, he argues that given the "undisputed testimony concerning the number of drive-by shootings during that time period, along with inconsistencies in the witnesses' testimony," there was not sufficient evidence to conclude that Alfaro was involved in the *specific* drive-by shooting that resulted in Chavez's death.

Alfaro filed motions for a judgment of acquittal after the close of the State's case and after the jury returned a guilty verdict. The district court denied both motions. On review of the denial of a motion for judgment of acquittal, we determine whether there is substantial evidence to support the challenged conviction. *State v. Hoyle*, 140 Idaho 679, 683, 99 P.3d 1069, 1073 (2004); *State v. Merwin*, 131 Idaho 642, 644, 962 P.2d 1026, 1028 (1998). Substantial evidence to support the challenged conviction is present when a reasonable mind could conclude that the defendant's guilt of the offense was proven beyond a reasonable doubt by such material evidence. *Hoyle*, 140 Idaho at 684, 99 P.3d at 1074; *State v. Kuzmichev*, 132 Idaho 536, 545, 976 P.2d 462, 471 (1999). Where there is competent although conflicting evidence to sustain the verdict, this court cannot reweigh that evidence or disturb the verdict. *Hoyle*, 140 Idaho at 684, 99 P.3d at 1074; *Merwin*, 131 Idaho at 644-45, 962 P.2d at 1028-29. In reviewing a motion for judgment of acquittal, all reasonable inferences on appeal are taken in favor of the prosecution. *Hoyle*, 140 Idaho at 684, 99 P.3d at 1074; *Kuzmichev*, 132 Idaho at 545, 976 P.2d at 471.

At trial, Musquiz testified that on the night of the shooting, he and Maceda arrived at Flores' house as it was getting dark. They hung out drinking beer and smoking marijuana. Alaniz and Alfaro arrived in a vehicle with Alfaro driving. Musquiz was unable to explain how he knew Alfaro or whether he had met him before that night. Musquiz testified he and Maceda joined the two men in the car and they drove around for a bit, eventually ending up in Westside "territory" where they drove past a house Musquiz did not recognize. Musquiz testified there were two people standing in the front yard and that once the car turned around and headed back toward the house, Maceda and Alaniz opened fire, shooting at the house and the men in front of the house. He testified Alfaro drove the four to a Flying J truck stop where he, Maceda, and Alaniz were picked up by Alaniz's girlfriend.

5

Flores testified he was having a party on the evening of August 14, 2004, and Musquiz and Maceda had arrived at approximately 9 or 10 p.m. when it was getting dark. About an hour later, Alfaro and Alaniz arrived with Alfaro driving a black, two-door Monte Carlo. Flores testified Maceda and Musquiz left with Alfaro and Alaniz and approximately ten to thirty minutes later, Flores heard gun shots. He also testified that on August 14, 2004, at 12:35 a.m., a bullet grazed his leg during a shooting outside his house. He testified that this shooting happened on a *different* night than the night Alfaro and Alaniz picked up Macedo and Musquiz at Flores's home.

At trial, Alaniz testified[2] that on the evening of August 13, 2004, he and Alfaro drank some beers and discussed that Alaniz's house had been shot at by some Westsiders. The two then went to Flores's house, with Alfaro driving a four-door sedan, where they picked up Macedo and Musquiz. Alaniz testified he had a Glock .40 gun and Macedo was armed as well. Alaniz stated that the four drove to Rodriguez's house, noticed two people outside, and Alfaro turned off the headlights. Alaniz stated he heard gunfire, got out his gun, and started shooting at the house. The four then drove to a Flying J truck stop to fix a flat tire, where a girlfriend picked up him, Macedo, and Musquiz, leaving Alfaro with the vehicle.

Rodriguez testified that in the early morning hours of August 14, 2004, he was at home drinking beer with Castillo, Alverado, and Chavez. After Chavez went inside the house, with the three others remaining outside, Rodriguez noticed a white car drove by his house several times at a high rate of speed. Shortly thereafter, another darker car drove down the street with its lights out, going very slowly. He heard gunshots coming from the car and somehow came to have a gun in his hand (he denied having a firearm before the shooting and testified he did not know where the gun had come from or what happened to it after the shooting) with which he began shooting back. He ran inside to find Chavez shot in the neck.

Castillo also testified he was at Rodriguez's house with Alverado and Chavez on August 14, 2004. He did not see the white car Rodriguez mentioned, but testified he saw a car

---

2       In order to testify at trial, Alaniz was transported from a federal prison where he was serving time for distribution of methamphetamine. On the evening before his testimony, he entered a binding plea agreement, agreeing to plead guilty to voluntary manslaughter for Chavez's death and to testify against Alfaro in exchange for a unified sentence of twenty-one years, with six years determinate, to run concurrently with his federal sentence.

drive down the street, turn around, and drive back towards the house. Castillo testified the car was traveling fast for a neighborhood and he did not recall the headlights being turned off.

In arguing there was insufficient evidence to support the jury's verdict--because there was insufficient evidence to establish that Alfaro had been involved in the specific shooting on August 14 that killed Chavez--Alfaro focuses on the contradictions in the testimony of these witnesses. He argues that none of the Westsiders' testimony competently linked a vehicle driven by Alfaro with the vehicle used in the shooting. He points out that although Rodriguez testified the vehicle whose occupants shot at his house only drove by once and did not turn around, Castillo testified the vehicle drove by once and then returned. Additionally, Rodriguez indicated the vehicle's lights were turned off, whereas Castillo could not remember and Castillo testified the car was going fast, whereas Rodriguez testified it was going slowly. Finally, Musquiz and Alaniz testified they drove by a house in Westside territory with two, not three, people outside.

Alfaro also contends none of the Eastside gang members competently testified that any shooting Alfaro was involved in took place in the early morning hours of August 14. Flores testified he observed Musquiz and Macedo leave with Alfaro and Alaniz on a different night than when Flores stated he was shot at in another incident. Additionally, Flores testified that Musquiz and Macedo arrived at his house around 9 or 10 p.m. and left with Alfaro and Alaniz about an hour later. Alaniz and Musquiz testified they only drove around for a short period of time before driving to Rodriguez's house, which Alfaro contends places them at the scene of the shooting much earlier than 3:30 a.m. when Chavez was killed. Flores also testified he held the party attended by Musquiz and Macedo beginning on the evening of August 14, which, if Flores was believed, means the shooting that occurred in the early morning hours of August 14 happened *before* the party. Alfaro also discounts Musquiz's testimony that the shooting occurred on August 14 because "it is apparent that his testimony concerning the date was not based on personal knowledge." When first discussing the incident with police in 2005, Musquiz said he did not know what time of year or what time of day the incident occurred. Thus, Alfaro argues, it is an "inescapable conclusion" that Flores observed Macedo and Musquiz get into a vehicle with Alfaro and Alaniz on a different night than the one on which Chavez died.

Alfaro contends that these inconsistencies and a lack of substantial evidence tying the shooting described by Musquiz, Flores, and Alaniz with the shooting that killed Chavez, in combination with the fact it was undisputed there were many drive-by shootings in Caldwell that

7

summer, including three reported at Rodriguez's house in August alone, resulted in insufficient evidence to establish beyond a reasonable doubt that Alfaro participated in the shooting that resulted in Chavez's death. Alfaro's argument is unavailing. There were certainly contradictions in the witnesses' testimonies regarding the details of the incident; however, it is well-settled that absent a showing that evidence lacks competence, conflicts are an inadequate basis upon which to disturb a jury's factual finding. *Hoyle*, 140 Idaho at 684, 99 P.3d at 1074. All of the witnesses testified the incident took place at night and Alaniz and Musquiz both testified they had participated in a drive-by shooting in the early morning hours of August 14, 2004, in which Alfaro was the driver. Alaniz testified they shot at Rodriguez's house and Musquiz identified Rodriguez's house as the target of the shooting that occurred when Alfaro was the driver. As the State points out, those testimonies were consistent with the testimony of the detective who responded to the call immediately following the shooting on August 14. In addition, a Caldwell police officer testified, consistent with his report at the time, that the drive-by shooting that occurred near Flores' house and resulted in a bullet passing near Flores' leg, occurred in the early morning hours of August 14, approximately three hours before Chavez was shot. Further, as the State points out, the inconsistencies between the testimonies of the various gang members is largely unremarkable given that the shooting had occurred approximately six years before trial and most, if not all, of the witnesses had been intoxicated and at least some had smoked marijuana on the night of the shooting.

Alfaro concedes there was sufficient evidence for the jury to reasonably conclude that he participated in a drive-by shooting of Rodriguez's house with Alaniz, Maceda, and Musquiz. The inconsistencies in the testimony did not defeat the sufficient competent evidence presented that this shooting occurred in the early morning hours of August 14 and resulted in Chavez's death. The district court did not err in denying Alfaro's motions for acquittal.

## C. Sentence Review

Alfaro also argues the district court abused its discretion and violated his constitutional rights to a jury trial and due process by sentencing him more harshly because he exercised his right to trial. Because there was apparently no objection before the trial court, we must review Alfaro's claim of a vindictive sentence, brought for the first time on appeal, for fundamental error. *State v. Robbins*, 123 Idaho 527, 529-30, 850 P.2d 176, 178-79 (1993); *State v. Baker*, 153 Idaho 692, 695, 290 P.3d 1284, 1287 (Ct. App. 2012); *State v. Grist*, 152 Idaho 786, 791, 275

P.3d 12, 17 (Ct. App. 2012). To establish fundamental error, the defendant must show the alleged error violates one or more of the defendant's unwaived constitutional rights, plainly exists without the need of additional information not contained within the appellate record, and affected the outcome of the proceedings. *State v. Perry*, 150 Idaho 209, 228, 245 P.3d 961, 980 (2010).

Alfaro's assertion fails because he has not shown the error is clear in the record. A sentencing court may not impose a harsher sentence on a defendant for putting the state to its burden of proof and exercising the right to trial. *State v. Kellis*, 148 Idaho 812, 814, 229 P.3d 1174, 1176 (Ct. App. 2010); *Stedtfeld v. State*, 114 Idaho 273, 276, 755 P.2d 1311, 1314 (Ct. App. 1988); *State v. Regester*, 106 Idaho 296, 299, 678 P.2d 88, 91 (Ct. App. 1984). A defendant must prove actual vindictiveness. *Robbins*, 123 Idaho at 532, 850 P.2d at 181; *Baker*, 153 Idaho at 695, 290 P.3d at 1287. We look to the totality of the circumstances when reviewing a record for whether a sentence was imposed vindictively. *Baker*, 153 Idaho at 695, 290 P.3d at 1287; *State v. Brown*, 131 Idaho 61, 72, 951 P.2d 1288, 1299 (Ct. App. 1998). Our scope of review under the totality of the circumstances is narrowly defined:

> [W]e do not view the "totality of circumstances" rule as an invitation for an appellate court to weigh the sentence against the entire record and to treat the vindictiveness issue as merely a question of abuse of sentencing discretion. Rather, we recognize that vindictiveness is a more subtle, narrow question. It focuses upon the sentencing judge's view of the defendant's decision to plead not guilty. That view cannot be determined upon a single remark removed from context. The judge's words and actions must be considered as a whole.

*Regester*, 106 Idaho at 300, 678 P.2d at 92. A disparity in sentencing among co-defendants in the same criminal activity does not make the harsher sentence per se excessive or an abuse of discretion. *Stedtfeld*, 114 Idaho at 276, 755 P.2d at 1314.

As noted above, Alfaro was sentenced to a unified term of life, with twenty years determinate, on the murder conviction and five years determinate for each remaining count, with all sentences to run concurrently. In arguing the district court imposed a longer sentence in retaliation for his decision to go to trial, Alfaro focuses on the fact that Alaniz, who actually fired a weapon at the residence, only received a unified term of fifteen years, with six years determinate. The "sole distinction," between Alfaro and Alaniz, Alfaro contends, is that Alaniz elected to plead guilty and testify against Alfaro. He points out that in sentencing him, the district court opined that the plea bargained sentence of Alaniz and the other perpetrators did not

9

serve justice, but that the State had been forced into those agreements because Alfaro had exercised his right to a jury trial. Alfaro argues that none of the district court's other rationales, including deterrence, justified the imposed sentence, and therefore, he asserts the district court sentenced him more harshly because he exercised his right to trial.

Alfaro's conclusion--that the district court imposed his sentence to punish him for exercising his right to trial--is not supported by the record. The disparity between Alaniz's and Alfaro's sentences was the result of the negotiated sentence reduction for Alaniz's cooperation with the State in pleading guilty. It does not follow that the court's intention in imposing sentence was to punish Alfaro for proceeding to trial. The district court explicitly recognized the disparity and expressed concern about how to reconcile it, but ultimately determined, *based on the requisite sentencing objectives*, that a twenty-year determinate sentence was appropriate for the murder conviction. Specifically, the court noted the protection of society was an overarching concern, deterrence required a longer sentence because a "message" needed to be sent to individuals in the community that such actions could not be tolerated, and it was a "heinous" crime that deserved significant retribution. *Accord Baker*, 153 Idaho at 696, 290 P.3d at 1288 (holding Baker could not show plain error because the record did not demonstrate the district court based its sentence on Baker's entry of an *Alford*[3] plea; rather the court gave consideration to Baker's broader failure to accept responsibility and callous attitude toward his offenses, which made him a danger to the public). The sentences imposed were based on proper statutory considerations, not on a desire to punish Alfaro for proceeding to trial, and therefore, Alfaro has failed to show the district court committed fundamental error in imposing sentence.

## D.     Cumulative Error

Finally, Alfaro contends that even if harmless individually, the errors alleged cumulatively deprived him of his due process right to a fair trial. In order to find cumulative error, this Court must conclude there is merit to more than one of the alleged errors and then conclude that these errors, when aggregated, denied the defendant a fair trial. *Dunlap v. State*, 141 Idaho 50, 66, 106 P.3d 376, 392 (2004). Here, we did not find that any error occurred; thus, the cumulative error doctrine is not applicable.

---

[3]     *See North Carolina v. Alford*, 400 U.S. 25 (1970).

### III.

### CONCLUSION

Alfaro has not shown the prosecutor committed misconduct in closing arguments. Nor has he shown the district court erred in denying his motions for a judgment of acquittal as there was sufficient evidence presented at trial for a reasonable jury to conclude beyond a reasonable doubt that Alfaro was the driver of the vehicle involved in the drive-by shooting that resulting in Chavez's death. Alfaro has also not shown that the district court committed fundamental error by imposing a vindictive sentence; the district court based its sentence on the requisite statutory factors and not on Alfaro's decision to proceed to trial. Alfaro's judgment of conviction and sentences for aiding and abetting first degree murder, two counts of aiding and abetting aggravated assault, and aiding and abetting unlawful discharge of a firearm at a dwelling and his sentence enhancement for infliction of great bodily injury are affirmed.

Judge LANSING and Judge GRATTON **CONCUR.**